In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Michael A. GRAL, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Michael A. GRAL, Respondent.

Supreme Court

*No. 2006AP1021–D. Decided March 9, 2010.*

2010 WI 14

(Also reported in 779 N.W.2d 168.)

¶ 1. PER CURIAM. We review a referee's report recommending that Michael A. Gral's license to practice law in Wisconsin be reinstated. No party has appealed from the report and recommendation. Consequently, the court's review proceeds under SCR 22.33(3).[1]

¶ 2. We adopt the referee's findings of fact and conclusions of law and conclude that Attorney Gral's license to practice law should be reinstated upon conditions to be discussed later. We further direct Attorney Gral to pay the costs of the reinstatement proceeding, which total $4,179.83 as of September 29, 2009.

¶ 3. Attorney Gral was admitted to practice law in Wisconsin in 1985. From August 1994 through July 2004 he practiced law at Michael Best & Friedrich LLP ("MBF"). In October 2005 he voluntarily advised the State Bar of Wisconsin that he was changing his membership status from active to inactive.

¶ 4. This reinstatement proceeding stems from a three-year suspension of Attorney Gral's license to practice law arising out of his federal court conviction for one count of mail fraud, in violation of 18 U.S.C. § 1341 (2005). The United States Attorney for the Eastern District of Wisconsin issued a one-count information against Attorney Gral on December 14, 2005. On that same date, Attorney Gral and the government filed a plea agreement in which Attorney Gral agreed to plead guilty to the one-count information. Attorney Gral entered a plea the same day. On June 15, 2006, the federal court sentenced Attorney Gral to two years imprisonment, to be followed by three years of supervised release. Attorney Gral was released from Oxford

---

[1] SCR 22.33(3) provides, "If no appeal is timely filed, the supreme court shall review the referee's report, order reinstatement, with or without conditions, deny reinstatement, or order the parties to file briefs in the matter."

Correctional Institution in the spring of 2008. He was discharged from supervision and the proceedings in the federal court case were terminated on February 1, 2010.

¶ 5. In January 2006 Attorney Gral advised the Office of Lawyer Regulation (OLR) that he agreed to a summary suspension of his law license pending the conclusion of disciplinary proceedings arising out of the federal mail fraud conviction. On February 27, 2006, this court summarily suspended Attorney Gral's license. In April 2006 the OLR issued a complaint against Attorney Gral charging a violation of SCR 20:8.4(b), which provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

¶ 6. In July of 2006 the OLR and Attorney Gral entered into a stipulation whereby Attorney Gral amended his previously filed answer to the OLR's complaint and entered a plea of "no contest" to the allegations in the complaint. The stipulation set forth the background of the transactions that led to the federal mail fraud conviction. The stipulation noted that when the transactions occurred, Attorney Gral was an attorney at MBF and one of MBF's clients was Bielinski Bros. Builders, Inc., and related entities, which was owned by Frank and Harry Bielinski. Attorney Gral's principal contact at Bielinski Bros. was Robert Brownell, who served in various executive positions including serving as Bielinski's chief executive officer for more than three years.

¶ 7. Attorney Gral stipulated that he entered into real estate transactions with Brownell. In the course of the transactions, Brownell improperly took funds from the Bielinskis without their knowledge. Brownell led Attorney Gral to believe that the Bielinskis were aware

of the transactions and that the Bielinski entities had been repaid. Attorney Gral did not contact the Bielinskis to confirm that they were aware their funds had been used nor did he inquire whether the funds had been repaid. In fact, the Bielinskis were not aware of and had not approved the use of their funds, nor had they been repaid by Brownell. In the stipulation, Attorney Gral admitted that his acts were inappropriate since he did not contact the Bielinskis. Attorney Gral admitted that when he became aware of certain facts in the transactions relating to the Bielinskis, he failed to confirm the information with them, and he also admitted that his actions had the effect of placing his own financial interests ahead of his clients' interests.

¶ 8. In a sentencing memorandum filed by the government in the federal court action, the government said that, "Gral's wrongdoing generally involves 'sins of omission.' " The government also noted that Attorney Gral did not directly obtain any money from the Bielinskis, that Brownell was the instigator of the overall fraud against the Bielinskis, and that many aspects of Brownell's fraud did not involve Attorney Gral.

¶ 9. Prior to the federal court's imposition of sentence in the criminal matter, Attorney Gral entered into a resolution with the Bielinskis and MBF. As part of that resolution, Attorney Gral agreed to pay $4,489,533. Attorney Gral paid $1,200,000 to the Bielinskis in June of 2006. In order to make this payment Attorney Gral liquidated a large portion of his retirement account and received a loan from his father.

¶ 10. On February 16, 2007, this court suspended Attorney Gral's license to practice law for three years, retroactive to February 27, 2006, the date on which the court summarily suspended Attorney Gral's license. *See In re Disciplinary Proceedings Against Gral*, 2007 WI 22, 299 Wis. 2d 160, 727 N.W.2d 495.

¶ 11. Attorney Gral filed a petition for reinstatement of his law license in March 2009. The petition indicated that if his license is reinstated, Attorney Gral intends to engage in the private practice of law. The OLR filed a response to the petition for reinstatement in July 2009. James Winiarski was appointed referee in the matter. A hearing was held on Attorney Gral's reinstatement petition on August 18, 2009.

¶ 12. Attorney Gral and a number of character witnesses testified in support of his reinstatement petition. Attorney Gral testified that as of the date of the hearing he had paid the Bielinskis approximately $2.7 million. He explained that he had been unable to make a $600,000 payment to the Bielinskis that was due on July 1, 2009, because he did not have sufficient liquid assets. He said he had advised the OLR prior to July 1, 2009, that he would be unable to make the payment. He also said that his next payment to the Bielinskis, also in the amount in the $600,000, was due July 1, 2010, and that scheduled interest on that payment would be in the approximate amount of $500,000. Attorney Gral said he was very disappointed he had been unable to make the July 2009 payment, but that the obligation with the Bielinskis had been entered into in 2006 and was based on assets he owned at that time. He said the 2009 real estate market was very different than it had been in 2006.

¶ 13. Attorney Gral explained that he earns money by investing in real estate, adding value to it, and ultimately selling or refinancing it to generate proceeds. He said he had expected to make payments to the Bielinskis through the liquidation of assets and refinancing those assets, but current real estate markets were not conducive to trying to raise the funds that would be needed to make the payments. When asked how he

intended to ensure that restitution would be paid to the Bielinskis by July of 2010, Attorney Gral said he intended to continue to liquidate real estate assets and other assets to use as a source of funds. He said he was working every day on making the payment and that he would honor the payment just as he had done with his past obligations.

¶ 14. The referee questioned Attorney Gral about how he intended to avoid the potential for conflict in the future if he was going to be a real estate investor and was going to be representing clients in real estate transactions. Attorney Gral's response was, "Not invest with clients."

¶ 15. Attorney Jonathan Margolies, general counsel of MBF, made a statement authorized by MBF saying that the entire firm opposed Attorney Gral's reinstatement. Attorney Margolies testified that upon discovering Attorney Gral's activities, MBF returned over one million dollars in fees to the Bielinskis and spent years and additional hundreds of thousands of dollars investigating the matter and cooperating with the U.S. Attorney's office. MBF also entered into a confidential settlement with the Bielinskis. Attorney Margolies said in addition to harming the reputation of the law firm, Attorney Gral also harmed the reputation of all lawyers in the state.

¶ 16. On cross-examination by Attorney Gral's counsel, Attorney Margolies admitted that he had not had any contact with Attorney Gral since the sentencing occurred in June of 2006. He also admitted that nothing new had occurred since that time, he was not offering any new facts, and the information he mentioned at the reinstatement hearing had previously been given to the government prior to Attorney Gral's sentencing. The Bielinskis also oppose Attorney Gral's reinstatement.

¶ 17.  Another MBF attorney, Steven Means, submitted a letter as part of the reinstatement proceeding saying that Attorney Gral's crimes "were the result of conscious, deliberate acts over a period of time that were motivated by personal greed. This man should never practice law again."

¶ 18.  The Board of Bar Examiners filed a memorandum stating that on the basis of the materials Attorney Gral had submitted, it recommended his reinstatement.

¶ 19.  The referee issued his report and recommendation on September 14, 2009. The referee noted that the standards that apply to all petitions seeking reinstatement after a disciplinary suspension or revocation are set forth in SCR 22.31(1).[2] The referee also noted that SCR 22.31(1)(c) incorporates the statements that a petition for reinstatement must contain pursuant to SCR 22.29(4).[3]

---

[2] SCR 22.31(1) provides:   Reinstatement hearing.

The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:

(a) That he or she has the moral character to practice law in Wisconsin.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to [(4m)] and 22.29(5), are substantiated.

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

[3] SCR 22.29(4) states the petition for reinstatement shall show all of the following:

¶ 20. The referee concluded that Attorney Gral met his burden of proof in all respects and that his license should be reinstated "with the condition that he be prohibited from representing any clients with whom he, or any member of his immediate family, has in the past or is currently involved with by way of personal real estate investments, of any kind or nature, whether directly or through any business entity." The referee

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(4m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

287

also recommended that Attorney Gral be responsible for the full costs of the reinstatement proceeding.

¶ 21. Attorney Gral filed a response to the referee's report and recommendation with respect to the referee's proposed condition of reinstatement. Attorney Gral expressed concern that as proposed, the condition would pose problems in monitoring, both for him and for the OLR. He also asserted that the condition proposed by the referee was vague and overbroad. Attorney Gral offered the following condition of reinstatement in place of the one proposed by the referee:

> In order to better monitor compliance with the requirements of SCR 20:1.8(a), for a period of three years after the date of his reinstatement, the Petitioner shall do the following:
>
> (1) File with the Office of Lawyer Regulation ("OLR") a written notice within 30 days of entering into any agreement with a client under SCR 20:1.8(a); this notice shall contain a general description of the transaction. The Petitioner shall provide copies of any disclosures and consent documents upon request of OLR, who shall keep the identity of the client confidential; and
>
> (2) File an annual report with OLR during the term of this condition on or before July 1 of each year summarizing his compliance with any waivers obtained under SCR 20:1.8(a).

¶ 22. Having independently considered the matter, we determine that the referee's findings of fact are not clearly erroneous. *See In re Disciplinary Proceedings Against Carroll,* 2004 WI 19, ¶ 9, 269 Wis. 2d 172, 675 N.W.2d 792 (referee's factual findings affirmed unless clearly erroneous). We also agree with the referee that based upon those factual findings, Attorney Gral has satisfied the requirements for the reinstate-

ment of his license to practice law in Wisconsin. *Id.* (referee's conclusions of law reviewed on a de novo basis).

¶ 23. Although the referee recommended that Attorney Gral's license be reinstated, the referee identified several areas of concern. First, the referee noted that Attorney Gral's former law firm strongly opposes reinstatement. Second, the referee commented that since Attorney Gral entered a guilty plea in the criminal case and he entered into a stipulation, resulting in the suspension of his law license in the attorney disciplinary case, there was never a trial or a hearing which examined his criminal conduct. The referee said when he questioned Attorney Gral during the reinstatement hearing as to how he could claim he simply made errors in judgment and omission, as compared to undertaking deliberate actions for his own selfish financial purposes, his answers were ambiguous.

¶ 24. The referee said while it was not his job to second-guess the resolution of the criminal case or the facts to which Attorney Gral stipulated which led to his three-year suspension, it was the referee's opinion that Attorney Gral did much more than simply make errors in judgment or omission as he claims. The referee said such an inquiry was relevant on the issue of Attorney Gral's fitness to be reinstated to the practice of law since it relates not only to his "understanding of and attitude toward the standards that are imposed upon members of the bar," but it also bears upon whether he can "safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts."

¶ 25. The referee said:

Given Gral's exemplary conduct since his criminal activities, I do not believe any of the concerns I noted above rise to the level of preventing his reinstatement at this time. Despite his criminal conduct, Gral has done everything possible since his criminal conduct became known to comply with all federal orders and judgments, and all Wisconsin Supreme Court rules. In addition, as the federal court noted, Gral went beyond simply complying with court orders, given that he also affirmatively sought to cooperate in every manner possible with federal authorities.

Gral has repeatedly accepted full responsibility for his criminal activities. While he is loath to characterize his criminal conduct as involving deliberate acts of a fraudulent nature, he has fulfilled all the obligations imposed on him by the federal court. He has also fulfilled all the conditions precedent for reinstatement under Wisconsin Supreme Court rules.

In relation to the missed restitution payment, I note the substantial amounts he has already paid in restitution, fines and costs, at both the federal and state level. I also note the current economy, given that Gral's source of funds for most payments have been primarily from his personal real estate investments. Bielinski Brothers presumably has recourse under the civil settlement agreement if all payments are not ultimately made by Gral.

¶ 26. Although we share some of the concerns raised by the referee, particularly MBF's and the Bielinskis' strong opposition to the reinstatement petition, there is no basis on which to find that the referee's factual findings were clearly erroneous. Since the referee's conclusions of law flow from those factual findings, we agree that Attorney Gral should be reinstated to the practice of law in this state. We also concur with the referee that Attorney Gral's reinstatement

should be subject to conditions. While Attorney Gral argues that the conditions proposed by the referee are too stringent, we find the alternate conditions proposed by Attorney Gral to be insufficient to ensure that he will not repeat the behavior that led to his criminal conviction and the suspension of his law license.

¶ 27. We agree with Attorney Gral that the referee's proposed condition is overbroad. Prohibiting Attorney Gral from ever representing clients with whom members of his immediate family had real estate investment dealings could have a chilling effect on his practice and seems to go beyond what is required to ensure that Attorney Gral does not repeat his past mistakes. However, we do not agree with Attorney Gral's proposal that he should immediately be allowed to enter into business transactions with clients, provided he obtain conflict waivers and notify the OLR.

¶ 28. While SCR 20:1.8 does permit attorneys to engage in business transactions with clients, the rule sets forth stringent requirements for such transactions, including giving full disclosure to the client and obtaining informed consent from the client. Even when these requirements are scrupulously followed, attorneys should not enter into such transactions lightly. The ABA Comment to the Model Rule which forms the basis for SCR 20:1.8 states, "A lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property or financial transaction with a client; . . . ." This was precisely what led to Attorney Gral's criminal conviction and the suspension of his law license. Given his past behavior, we have misgivings about ever allowing Attorney Gral to enter into business relationships with clients, but we conclude that

imposing a lifelong prohibition on his ability to enter into such transactions may be excessive. Accordingly, we impose conditions that represent a sort of middle ground between those proposed by the referee and those proposed by Attorney Gral.

¶ 29. In order to protect clients or potential clients and in order to ensure that Attorney Gral's past misconduct is not repeated, we deem it appropriate to impose the following conditions on the reinstatement of his license to practice law in Wisconsin:

- During the first three-year period after his reinstatement, Attorney Gral shall be prohibited from representing any clients with whom he has in the past or is currently involved with by way of personal real estate investments, of any kind or nature, whether directly or through any business entity.

- For a period beginning during the fourth year after his reinstatement, until six years after his reinstatement, Attorney Gral shall file with the OLR a written notice within ten days of entering into any agreement with a client under SCR 20:1.8(a); this notice shall contain a general description of the transaction. Attorney Gral shall provide copies of any disclosures and consent documents upon request of OLR, who shall keep the identity of the clients confidential.

- Attorney Gral shall file an annual report with OLR during the term of this condition, on or before July 1 of each year, summarizing his compliance with any waivers obtained under SCR 20:1.8(a).

¶ 30. IT IS ORDERED that the petition for reinstatement of the license of Michael A. Gral to practice law in Wisconsin is granted, effective the date of this order.

292

¶ 31. IT IS FURTHER ORDERED that the reinstatement of Michael A. Gral's license to practice law be subject to the following conditions:

A. During the first three-year period after his reinstatement, Attorney Gral shall be prohibited from representing any clients with whom he has in the past or is currently involved with by way of personal real estate investments, of any kind or nature, whether directly or through any business entity.

B. For a period beginning during the fourth year after his reinstatement, until six years after his reinstatement, Attorney Gral shall file with the Office of Lawyer Regulation a written notice within ten days of entering into any agreement with a client under SCR 20:1.8(a); this notice shall contain a general description of the transaction. Attorney Gral shall provide copies of any disclosures and consent documents upon request of the Office of Lawyer Regulation, who shall keep the identity of the clients confidential.

C. Attorney Gral shall file an annual report with the Office of Lawyer Regulation during the term of this condition, on or before July 1 of each year, summarizing his compliance with any waivers obtained under SCR 20:1.8(a).

¶ 32. IT IS FURTHER ORDERED that within 60 days of the date of this order, Michael A. Gral shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of Michael A. Gral to practice law in Wisconsin shall be suspended until further order of the court.