In the MATTER OF DISCIPLINARY PROCEEDINGS
AGAINST David V. JENNINGS, III,
Attorney at Law:

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY
n/k/a Office of Lawyer Regulation,
Complainant-Respondent,

v.

David V. JENNINGS, III,
Respondent-Appellant.

Supreme Court

*No. 92AP3208–D. Oral argument April 19, 2011.
—Decided June 23, 2011.*

2011 WI 45

(Also reported in 801 N.W.2d 304.)

For the respondent-appellant there were briefs by *David V. Jennings, III,* Cedarburg and oral argument by *David V. Jennings.*

For the complainant-respondent there were briefs by *Keith L. Sellen* and *Julie M. Spoke* and *Office of Lawyer Regulation,* Madison and oral argument by *Julie M. Spoke.*

¶ 1. PER CURIAM. We review the recommendation of Referee Christine Harris Taylor to deny David V. Jennings III's petition for reinstatement of his license to practice law in Wisconsin. While finding that Attorney Jennings' employment history during the term of his license revocation has been exemplary and that he has maintained competence and learning in the law, the referee concluded, nevertheless, that Attorney Jennings failed to satisfy by clear, satisfactory, and convincing evidence all of the reinstatement standards. *See* SCR 22.29(4) and (4m).[1]

---

[1] SCR 22.29(4) and (4m) provide the petitioner must demonstrate:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

337

¶ 2. Referee Taylor questioned Attorney Jennings' moral character, his attitude and understanding of the standards imposed on members of the bar, and whether he proved he would act in conformity with those standards. SCR 22.29(4)(f). She determined he failed to prove he can be safely recommended to represent others and he failed to establish his resumption of a legal practice would not be detrimental to the administration of justice or subversive to the public interest. *See* SCR 22.29(4)(g); *see also* SCR 22.31(1).[2] She also found that he failed to make full restitution to those harmed by his misconduct. SCR 22.29(4m).

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(4m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

[2] SCR 22.31(1) provides:

The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:

(a) That he or she has the moral character to practice law in Wisconsin.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to [(4m)] and 22.29(5), are substantiated.

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

¶ 3. Although we approve and adopt the referee's findings of fact, which are undisputed, we do not agree with her legal conclusions that Attorney Jennings failed to satisfy all the requirements of SCR 22.29 and we do not adopt her recommendation. We conclude the record establishes clear, satisfactory, and convincing evidence that Attorney Jennings has satisfied all of the requisites for reinstatement of his license to practice law in Wisconsin, subject to conditions relating to his continuing obligations of restitution. Therefore, we grant his petition subject to conditions. We also direct that Attorney Jennings bear the costs of these reinstatement proceedings.

## I. BACKGROUND

¶ 4. The background is lengthy. Attorney Jennings, who had been admitted to practice law in Wisconsin in 1975, filed a petition for voluntary revocation of his law license in December 1992. Attorney Jennings acknowledged he could not successfully defend against allegations he had converted $550,000 from Milwaukee Cheese Wisconsin, Inc., and Sheboygan Sausage, Inc., whom he had been appointed to represent in bankruptcy proceedings.

¶ 5. In addition, Attorney Jennings admitted to embezzling between $85,000 and $100,000 from his mother's living trust, of which he was the trustee, during the same time frame he had been embezzling funds from Milwaukee Cheese and Sheboygan Sausage. This court revoked Attorney Jennings' law license in January 1993. *In re Disciplinary Proceedings Against Jennings*, 172 Wis. 2d 638, 493 N.W.2d 375 (1993) ("Jennings I").

¶ 6. Shortly after his thefts were discovered, Attorney Jennings executed a mortgage in 1992 on his real estate in Mequon in favor of both his parents, ostensibly

to secure his existing indebtedness to them as well as to secure new money his parents were contemplating advancing to him to resolve his embezzlements. However, after learning of the extent of his thefts, his parents did not advance him any funds.

¶ 7. In August 1993 Attorney Jennings pled guilty and was convicted in federal court of two counts of embezzlement and two counts of making false entries in bankruptcy estates.[3] He was sentenced to 27 months in prison followed by three years of supervised release. He was incarcerated from 1993 to 1995. He was ordered to make restitution of $590,200 in installment payments established by the probation office. *See In re Disciplinary Proceedings Against Jennings,* 2009 WI 26, ¶ 5, 316 Wis. 2d 6, 762 N.W.2d 648 ("Jennings II").

¶ 8. In 1997 Attorney Jennings sold his Mequon property. Attorney Jennings' father and his late mother's estate received approximately $93,000 of the sale proceeds. His former law firm, its malpractice insurance carrier, and Development Specialists, Inc. (DSI),[4] who had paid the bulk of the restitution to Milwaukee Cheese and Sheboygan Sausage, received as partial restitution the remaining proceeds amounting to $152,520.[5] "The mortgage favored Attorney Jennings' parents over other victims of his embezzlement

---

[3] *U.S. v. David Jennings, III,* U.S. District Court for the Eastern District of Wisconsin, Case No. 93–CR-026.

[4] DSI is a company that engages in restructuring, consulting, insolvency workouts and the provision of fiduciary services to bankruptcy courts.

[5] A civil judgment for $550,200 obtained against Attorney Jennings by Milwaukee Cheese and Sheboygan Sausage was assigned to Attorney Jennings' former law firm, its malpractice insurer, and DSI in exchange for a settlement. As found by the referee, following the partial restitution of proceeds from the

and resulted in his parents receiving 43 cents on each dollar of debt while his former law firm, its insurance carrier, and [DSI] received 28 cents on the dollar." *Jennings II*, 316 Wis. 2d 6, ¶ 7.

¶ 9. In 1998 the federal court revoked Attorney Jennings' probation due to his failure to make court-ordered restitution payments. He spent five days in jail and his probation term was extended for an additional 35 months. *Id.*, ¶ 6. In October 2001 he was discharged from supervision.

¶ 10. Attorney Jennings was ordered to pay $39,760 to the Employee Stock Ownership Trust of Milwaukee Cheese (ESOT). *Id.*, ¶ 10. On June 11, 2002, the federal court ordered garnishment requiring Attorney Jennings to continue with payments of $120 per paycheck towards the balance of the court-ordered restitution. As of October 2010, the total balance of the court-ordered restitution had been reduced to $3,010.

¶ 11. After his law license revocation but before his release from prison, Attorney Jennings' wife filed a petition to compel support and maintenance but did not seek a divorce or legal separation. In May 1993 Attorney Jennings was ordered to pay $1,000 per month in maintenance and $510 per month in child support. While Attorney Jennings was incarcerated, substantial arrearages of approximately $10,000 accrued in his support and maintenance obligations. Although his former law firm sought to intervene in the action, as did Milwaukee Cheese, Sheboygan Sausage and DSI, they were unsuccessful in challenging the support petitions.

¶ 12. In 1997 Attorney Jennings entered into a stipulation with his wife establishing a monthly child

---

sale of his real estate, Attorney Jennings continues to owe a total balance of $397,680, plus interest, to his former law firm, the malpractice insurer, and DSI.

341

support obligation of $460, which was slightly in excess of the 17 percent required under Wisconsin law for one child, and repayment of arrearages at $1,040 per month. Although he paid support, Attorney Jennings remained married and continued to live with his wife at their property in Mequon.[6] "These support payments served to shield more of Attorney Jennings' income from his creditors when he was released from prison since he had to make payments toward his current support and maintenance obligations as well as the arrearages that accrued during his incarceration." *Jennings II*, 316 Wis. 2d 6, ¶ 9. The parties were granted a divorce in 2010.

¶ 13.   From March 1995 through December 1999, Attorney Jennings was employed by the Heilig-Meyers Furniture Company in its Milwaukee stores as store manager and credit manager with fiduciary responsibilities for daily cash receipts, bank deposits, and inventory. During this time, he was licensed by the Wisconsin Commissioner of Insurance and was responsible for credit insurance sold in Wisconsin by his employer. Also, from July 1997 when Attorney Jennings obtained reinstatement of his Wisconsin Real Estate Broker's license, he has been affiliated with three real estate firms and worked as an independent broker.

¶ 14.   On October 6, 1999, Attorney Jennings filed his first reinstatement petition. After an investigation conducted by the Board of Attorneys Professional Responsibility (BAPR), the predecessor to the Office of Lawyer Regulation (OLR), and following a public hear-

---

[6] The record contains evidence indicating various other residences for Attorney Jennings in 2001 and after July 2006. However, the referee's fact finding as to his residence with his wife is not challenged on appeal.

ing, Attorney Jennings asked to withdraw his petition. His request was granted.

¶ 15.   From January 2000 through 2010, Attorney Jennings was employed by the Furniture Clearance Center, a division of the Porter Furniture Company, at various Racine and Milwaukee locations as store manager with fiduciary responsibilities for cash receipts, bank deposits, and inventory of significant value, as well as responsibilities for human resource management.[7]

¶ 16.   In September 2005 Attorney Jennings entered a no contest plea to operating while under the influence of alcohol, first offense, in Ozaukee County. In April 2006 his driver's license was suspended due to his failure to pay the forfeiture assessed as a result of the OWI conviction. *Jennings II,* 316 Wis. 2d 6, ¶ 11. Upon payment of the fine, his driver's license was reinstated.

¶ 17.   On November 12, 2007, Attorney Jennings filed a second reinstatement petition, which this court denied March 24, 2009. Despite having taken significant steps with respect to restitution, Attorney Jennings' former law firm and DSI were still owed large sums of money. Recognizing Attorney Jennings' claimed lack of financial resources, this court observed, "What we find far more troubling than his failure to make restitution is his apparent failure not to have ever tried to determine exactly how much he owes his former law firm." *Id.,* ¶ 25. Because of his failure to face up completely to his restitution obligations, this court denied reinstatement. *Id.*

¶ 18.   On March 15, 2010, Attorney Jennings filed a third reinstatement petition, which is now before the court. In response to the petition, the OLR noted its

---

[7] Attorney Jennings advises that due to the store's closing, he is currently actively seeking employment.

concern that in the wake of his misconduct, Attorney Jennings attempted to protect his personal interests and those of his family over those whom he had harmed. The OLR said that Attorney Jennings had engaged in years of systematic theft, causing serious injury to the victims of the theft, to his law firm, and to the reputation of the legal profession. Nonetheless, despite its concerns, the OLR stated it would not actively oppose reinstatement. The OLR noted that Attorney Jennings has had an exemplary work history and appears to have lived frugally in the years since his conversion of client funds. The OLR emphasized Attorney Jennings must carry the burden to prove that he is entitled to reinstatement under SCRs 22.29(4), (4m), and 22.31(1).

## II. PUBLIC HEARING

¶ 19. On October 12, 2010, Referee Taylor held a public hearing on the reinstatement petition. Notice of the hearing was published as required by SCR 22.30(3) and (4). The first witness to testify at the hearing was Attorney Edward A. Hannan, who spoke in opposition to reinstatement.[8] Attorney Hannan asserted that because Attorney Jennings could not have been counsel for a debtor in possession without a law license, the law license was the instrument of the crime. Attorney Hannan stated it was only through a third party audit that the embezzlements came to light. He noted that after the discovery of the thefts, Attorney Jennings created a mortgage on his property in favor of his parents, which complicated collection proceedings im-

_____

[8] Attorney Hannan stated he appeared as an individual and not in any official capacity. Attorney Hannan has been a member of the ethics committee of the state bar, has chaired the Office of Lawyer Regulation Preliminary Review Committee, and was a partner in Attorney Jennings' former law firm.

mensely. Attorney Hannan disputed Attorney Jennings' contention made in 2008 that he had cooperated in every way possible with his firm after the discovery of his thefts. Attorney Hannan testified that for a long time, Attorney Jennings attempted to characterize his thefts as loans in an attempt to avoid penalties and taxes on them. Attorney Hannan believed Attorney Jennings' conduct since his revocation failed to demonstrate an understanding of the seriousness of his violations and the gravity of the harm he caused through the use of a law license.[9]

¶ 20.  Attorney Jennings presented three witnesses supporting reinstatement. Attorney Steven M. Epstein testified Attorney Jennings has acknowledged his wrongdoing, remorse and responsibility, and has apologized to his victims. Attorney Epstein had represented Attorney Jennings in an attempt to negotiate a settlement with his former law firm, as well as in a post-sentencing matter in the criminal case. Attorney Epstein believes Attorney Jennings possesses the moral character to practice law.

¶ 21.  Next, William A. Brandt, Jr., President and CEO of DSI, testified Attorney Jennings had been a fine lawyer in the bankruptcy arena, had expressed remorse and sorrow for his misconduct, and has squared things with his family to the extent possible. Mr. Brandt testified the cost of the episode to him and his firm was between $300,000 and $400,000. Mr. Brandt said he has put the matter behind him and Attorney Jennings should be given a chance to be a productive member of society.

---

[9] Also, in a letter to the OLR, Attorney Hannan asserted that Attorney Jennings encumbered his property to frustrate restitution and cites, as an example, *Valley Bank v. Jennings*, 198 Wis. 2d 857, 544 N.W.2d 243 (Ct. App. 1995).

¶ 22. The third witness, Attorney Emile H. Banks, Jr., testified Attorney Jennings has made unsolicited expressions of remorse and told him he had no means to repay those in his former law firm who ended up absorbing the loss.

¶ 23. Entered as exhibits were letters from numerous individuals who supported Attorney Jennings' reinstatement, including the following:

- Attorney J. Dennis Thornton, who has known Attorney Jennings since law school, wrote that Attorney Jennings has paid the penalty for his errors, is fully rehabilitated, and possesses the moral character to be reinstated.

- Attorney William G. Ladewig, who has known Attorney Jennings since law school, wrote that Attorney Jennings understands the wrong he committed, is a man of brilliant intellect with the moral character to practice law, and deserves a second chance.

- Attorney Michael J. Donovan, who has known Attorney Jennings for many years before his revocation, wrote that he knows Attorney Jennings to be trustworthy, competent and professional, has found Attorney Jennings to be honest about his mistakes and that he deserves to be reinstated.

- Attorney Thomas J. McGinn, who has known Attorney Jennings since childhood and has been a recent customer at the furniture store where Attorney Jennings has been employed, wrote that Attorney Jennings is highly ethical in dealings with customers and has worked diligently to earn the trust of his employer.

- H.R. Waters, the president of the former Porters of Racine, which owned the Furniture Clearance Center where Attorney Jennings had until recently

worked as a manager, wrote that Attorney Jennings was open about his law license revocation. Waters stated Attorney Jennings worked as manager at every one of the store locations, was in a position of responsibility, handled significant amounts of cash and inventory in his position as manager, demonstrated very high moral character in dealing with customers and employees, and was well liked and highly regarded.

- Roger Davison, who works with a title insurance company, has known Attorney Jennings since 1993 and has worked with him with regard to real estate transactions and wrote that Attorney Jennings is very knowledgeable and deserving of the privilege of practicing law again.

- Sara Johnsen, a co-worker of Attorney Jennings at the furniture store since 2001, wrote that Attorney Jennings was trustworthy, responsible, highly professional, and honest about his past mistakes.

- Deborah Graupner, an interior designer who has done business with Attorney Jennings over the years, wrote that she believes he possesses high integrity, trustworthiness, and professionalism as would be expected of an attorney.

¶ 24.   Testifying on his own behalf, Attorney Jennings stated that other than his thefts discovered in 1992, there has never before or after been an allegation of misconduct in his professional life. He disagreed that granting the mortgage to benefit his parents was wrong and said that if the creditors believed it was wrong, they could have challenged it in legal proceedings. Attorney Jennings testified his child support payments had been in accordance with the 17 percent guidelines for one child.

¶ 25.   Attorney Jennings recounted his success as a manager of a furniture business and said he was

entrusted with collecting money, properly accounting for it, and paying it into various bank accounts. He admitted that in 2005 he received a traffic citation for operating while intoxicated, noting his failure to pay his fine promptly was unintentional. He further said he has withdrawn all his objections to the Wisconsin Department of Revenue tax assessments. He entered into a compromise and is making installment payments.

## III. REFEREE'S REPORT AND RECOMMENDATION

Referee Taylor filed her findings, conclusions, and recommendation on December 8, 2010. Referee Taylor observed that Attorney Jennings' witnesses described him as bright, hardworking, and capable of providing high quality legal services, as well as apologetic and remorseful for his misconduct. She noted the several letters supporting his reinstatement. In addition, the referee considered Attorney Jennings' employment history and found that he has, by all accounts, excelled at his position as a manager of a furniture store. She determined Attorney Jennings has proven many of the requirements for reinstatement pursuant to SCRs 22.29(4) and 22.31(1).[10] She noted he has fully complied with the terms of the revocation order. The referee considered that Attorney Jennings has made regular payments toward costs imposed in his previous reinstatement proceedings. In addition, the referee found Attorney Jennings has maintained competence and learning in the law through his attendance at educa-

[10] SCR 22.31(1) provides that an attorney seeking reinstatement of his or her license has the burden of demonstrating these requirements by clear, satisfactory, and convincing evidence.

tional activities as confirmed by the Board of Bar Examiners. *See* SCR 22.29(4)(d).

¶ 26.  Also, the referee observed, while his previous misconduct has been well-documented, neither the OLR nor any other witness presented any evidence to indicate that Attorney Jennings' conduct has not been exemplary or above reproach since the time of the 2008 reinstatement petition. *See* SCR 22.29(4)(e). Referee Taylor said no evidence had been presented to cast doubt on Attorney Jennings' present qualifications to practice law. She noted that if reinstated, Attorney Jennings intended to use his law license in business or to obtain employment in a supervised law firm. *See* SCR 22.29(4)(j). She observed that by all accounts, he has maintained regular employment and has excelled in his management position at the furniture store. *See* SCR 22.29(4)(k). She also found he has complied with the requirements of SCR 22.26 regarding the activities of a person whose license is revoked. *See* SCR 22.29(4)(h).

¶ 27.  However, the referee determined Attorney Jennings did not prove a proper understanding of and attitude toward the standards imposed on members of the bar and has failed to prove he will act in conformity with those standards. *See* SCR 22.29(4)(f). She concluded his testimony, in which he maintained his parents had legitimate claims secured by the 1992 mortgage on his property, evinced an unacceptable attitude. She observed, "[a]lthough Jennings does not have the ability to change the course of his past conduct, his attitude towards his past conduct remains unapologetic and without remorse."

¶ 28.  Similarly, Referee Taylor was unconvinced Attorney Jennings met his burden to show he can be safely recommended to the legal profession, the courts, and the public as a person fit to be consulted by others

349

and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice. *See* SCR 22.29(4)(g). Acknowledging that his witnesses testified to his past expressions of remorse, the referee nevertheless determined: "Jennings' testimony lacks any feeling of remorse or apology to the victims as a result of his misconduct." She said that while the record demonstrates Attorney Jennings' exemplary work history, she found the extent and gravity of his misconduct, and the fact his misconduct was directly related to his representation of his clients, "makes him less than trustworthy." Further, noting that Attorney Jennings continued to live in the same residence with his former wife while paying support and maintenance, Referee Taylor found that the stipulated payments to his wife served to divert funds back to himself and his family, at the expense of his clients, his former law firm, and the public.[11] Referee Taylor concluded the support payments, while seemingly an honorable action toward his family, called into question whether he can be safely recommended to the legal profession, the courts, and the public as a person fit to be consulted by others.

¶ 29.   Additionally, the referee noted that Attorney Jennings had not made full restitution to all persons harmed by his conduct. *See* SCR 22.29(4m). She found he had reimbursed his former firm $152,520 and currently still owed $397,680 plus interest. The referee noted one former law partner (Hugh R. Braun) acknowledged that Attorney Jennings would likely never be able to pay the firm back and indicated that all or most of the debt would be forgiven and the judgment against Attorney Jennings would be released. The ref-

---

[11] *See Jennings II*, 316 Wis. 2d 6, ¶ 9.

eree also noted that Attorney Jennings' sister, who is the trustee of his mother's estate, indicated she no longer seeks restitution of the remaining sums owed.

¶ 30. Referee Taylor considered the gravity of Attorney Jennings' professional misconduct that led to his revocation. The referee found Attorney Jennings has yet to explain his failure to pay court-ordered restitution from October 1997 to March 1998, resulting in an extended probation of three years. The referee recommended denying reinstatement and imposing costs, along with his continuing restitution obligations.

## IV. APPEAL

¶ 31. Attorney Jennings challenges the referee's determination that he failed to demonstrate by clear, satisfactory, and convincing evidence he satisfied the requirements for reinstatement of his license to practice law. He argues that the referee's determinations that he failed to meet the requisites of SCR 22.29(4)(f), (g), and (4m) are legal conclusions to be reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2007 WI 7, ¶ 15, 298 Wis. 2d 578, 726 N.W.2d 634.

¶ 32. Attorney Jennings contends he has continuously acknowledged his conversion of client and trust funds was deeply flawed, wrong, and reprehensible. He says he has never lacked contrition, has always been forthcoming with information, and there has been no failure to communicate or cooperate. Attorney Jennings argues his three witnesses spoke to his remorse and moral character, and supported his reinstatement. Attorney Jennings also relies on the numerous letters from individuals acquainted with him personally, which were produced as exhibits at the hearing.

¶ 33. Attorney Jennings argues: (1) the failure to admit the wrongfulness of the 1992 mortgage to his

parents should not preclude reinstatement; (2) the referee ignored the 1997 settlement with various claimants providing for the sale of his real property netting restitution of $250,000; (3) his failure to admit the wrongfulness of payments to family court should not preclude reinstatement; (4) other attorneys who engaged in similar misconduct have been reinstated;[12] (5) the entire record shows his remorse for his "reprehensible conduct" of converting client trust funds during the years of 1988 through July 1992; and (6) because he has paid substantial restitution and continues to pay regularly, his inability to make full restitution should not preclude reinstatement.

¶ 34. Attorney Jennings says that after making regular payments, his current indebtedness to ESOT has· been reduced to $3,010. Attorney Jennings acknowledges he has not made any direct payments to his former law firm since 1997, but that he has made proposals of settlement. Also, he says he has voluntarily named his former law firm as the beneficiary on a life insurance policy and continues to pay premiums, but lacks the means to repay the firm. He notes his sister and certain members of his former law firm are willing to forgive all or most of his debt because they know he may never be able to pay them back.

¶ 35. Attorney Jennings asserts that other lawyers have been reinstated without completing restitution, citing *In re Disciplinary Proceedings Against Gral,* 2010 WI 14, 323 Wis. 2d 280, 779 N.W.2d 168; *In re Disciplinary Proceedings Against Lieuallen,* 2007 WI 119, 305 Wis. 2d 29, 739 N.W.2d 486; *In re Disciplinary*

---

[12] *See In re Disciplinary Proceedings Against George,* 2010 WI 116, ¶ 25, 329 Wis. 2d 333, 789 N.W.2d 577; *In re Disciplinary Proceedings Against Taylor,* 2006 WI 112, 296 Wis. 2d 66, 720 N.W.2d 456.

*Proceedings Against Gilbert,* 2002 WI 102, 255 Wis. 2d 311, 647 N.W.2d 845; and *In re Disciplinary Proceedings Against Straub,* 2002 WI 130, 258 Wis. 2d 58, 655 N.W.2d 111.

¶ 36. The OLR filed a response to Attorney Jennings' appellate arguments. Although the OLR initially did not oppose the petition for reinstatement, the OLR now argues the referee properly determined Attorney Jennings failed to carry his burden. The OLR says the referee was entitled to consider the gravity of the misconduct and find Attorney Jennings' attitude remains unapologetic and without remorse. The OLR claims the record supports the referee's credibility assessment based on her observations of Attorney Jennings' demeanor at the reinstatement hearing. The OLR contends the referee's weight and credibility assessments are entitled to appellate court deference.

¶ 37. Also, the OLR argues, the cases on which Attorney Jennings relies should be distinguished. For example, in the case of *Taylor,* 296 Wis. 2d 66, the referee found no evidence of dishonesty or poor character since the original misconduct. In *George,* 329 Wis. 2d 333, this court concluded the proper attitude and understanding of ethical standards were shown. The OLR requests the court approve the referee's recommendation and deny reinstatement.

## V. DISCUSSION

¶ 38. We begin by observing that Attorney Jennings' professional misconduct was, as described in his own words, reprehensible. He has been professionally disciplined and criminally prosecuted for that misconduct. The referee was justifiably concerned with the gravity of Attorney Jennings' offenses. While conclud-

ing he satisfied several requisites for reinstatement, she determined that questions remained regarding Attorney Jennings' character, his attitude, and his understanding of ethical standards, particularly in light of an inadequate showing of remorse and incomplete restitution.

¶ 39.	In reviewing findings of fact, we defer to the referee's assessment of the credibility of witnesses. *See In re Disciplinary Proceedings Against Polich,* 2005 WI 36, ¶ 25, 279 Wis. 2d 266, 694 N.W.2d 367. We do not overturn the referee's fact findings unless clearly erroneous. However, we review conclusions of law de novo. *Id.,* ¶ 4. The referee's determination that Attorney Jennings' proofs failed to satisfy SCR 22.29(4)(f), (g), and (4m) are legal conclusions to be reviewed de novo, and we will review them as such. *See Eisenberg,* 298 Wis. 2d 578, ¶ 15.

¶ 40.	Turning to Attorney Jennings' arguments, we conclude a number of them are not entirely persuasive. Contrary to his assertion, the wrongfulness of the 1992 mortgage to his parents is no longer debatable, having been determined in *Jennings II.* 316 Wis. 2d 6, ¶ 7. Further, this court has already found that his payments to family court served to shield his income from creditors. *See id.,* ¶ 9. Also, contrary to his contention, the referee did not ignore the 1997 settlement with various claimants resulting from the sale of his real property, but took this partial restitution payment into account.

¶ 41.	Despite the weaknesses of some of Attorney Jennings' contentions, we ultimately agree with his contention that his reinstatement petition should be granted. Upon review of undisputed facts, it becomes

apparent that Attorney Jennings has made significant progress in satisfying reinstatement requirements. In addition to continuing monthly restitution payments to ESOT and maintaining competence in the law, he has demonstrated he has earned the trust and respect of those with whom he has worked. Over the past 15 years, Attorney Jennings has successfully held positions of trust and responsibility.

¶ 42.   Several individuals supporting Attorney Jennings' reinstatement petition are familiar with his employment history which, as found by the referee, is exemplary. The record establishes Attorney Jennings has been consistently employed for more than 15 years as a manager with considerable responsibilities. There is no dispute he has successfully performed his duties, which included fiduciary responsibilities for cash receipts, bank deposits, and inventory of significant value, as well as responsibilities of human resource management. By all accounts, he has performed these duties admirably.

¶ 43.   Also, it is undisputed Attorney Jennings' reinstatement petition has the support of numerous individuals. Letters written on his behalf state that Attorney Jennings has paid the penalty for his misconduct; he is competent and his subsequent actions have been highly ethical; he demonstrates high integrity and trustworthiness in his work; he is honest about his mistakes and cares for the people who work for him; he has rebuilt his life and has earned the privilege to practice law again; he is competent, capable, and would be an asset to the legal profession. We believe the record supports the conclusion Attorney Jennings recognizes the gravity of his misconduct and, over the course of nearly 19 years since his voluntary revocation, has learned from his transgressions.

¶ 44. We are, however, mindful of the significant concerns expressed by the referee and the OLR with respect to a lack of expressions of remorse and empathy at the public hearing. In addition, the referee was justifiably concerned with Attorney Jennings' continued obligations to members of his former law firm, the insurance carrier, and DSI, on which there has been no progress since 1997. We also consider the concerns expressed in Attorney Hannan's letter and his testimony opposing reinstatement. Because the referee's fact findings are not challenged as clearly erroneous, we affirm and adopt them on appeal. Thus, we accept as fact that Attorney Jennings' testimony at the public reinstatement hearing lacked a showing of remorse to the victims of his embezzlement. Although the gravity of the misconduct, a lack of expressions of remorse, and an absence of full restitution does not preclude reinstatement in all cases, these considerations are pertinent to the issues presented.

¶ 45. Further, we note Attorney Jennings' appellate arguments do not appear to recognize certain distinguishing features of the cases he cites in which reinstatement has been granted despite a failure to complete restitution. In the *Gilbert* case, for instance, reinstatement was conditioned on continuing restitution. *Gilbert,* 255 Wis. 2d 311, ¶ 13. Also, in the *Gral* case, Attorney Gral stated "he was working every day on making the [restitution] payment and that he would honor the payment just as he had done with his past obligations." *Gral,* 323 Wis. 2d 280, ¶ 13. Attorney Gral's commitment to restitution was persuasive evidence that he had accepted full responsibility for his criminal activities. *Id.,* ¶ 25. *See also Taylor,* 296 Wis. 2d 66, 14 (reinstatement subject to conditions including monthly restitution payments).

¶ 46.  We take into account Attorney Jennings' explanation that he lacks the financial resources to make additional restitution payments at this time. No evidence has been submitted to dispute his claimed lack of financial resources. Nonetheless, we conclude that Attorney Jennings' current lack of resources should not relieve him of a continuing obligation to make payments toward the restitution of the stolen sums.

¶ 47.  Accordingly, as ordered in other reinstatement cases involving incomplete restitution, Attorney Jennings shall be provided the opportunity to demonstrate his continued acceptance of full responsibility for his past criminal activities. To be entitled to reinstatement of his license to practice law in Wisconsin, he shall be required to continue to pay his current restitution obligations to ESOT, as well as address his restitution obligations to his former law firm, the malpractice insurer, and DSI, as follows:

¶ 1.    . Attorney Jennings shall continue to comply with his current restitution payments to the ESOT until such time as these obligations are paid in full or modified;

¶ 2.    . Within 30 days of the date of his reinstatement and annually thereafter, Attorney Jennings shall disclose to the OLR his income, assets, and net worth, including all W-2s, tax returns, financial statements, and other documentation, until such time as he has settled or satisfied all his restitution obligations to ESOT, members of his former law firm, its insurance carrier, and DSI;

¶ 3.    . Within 60 days of the date of his reinstatement, and periodically thereafter, Attorney Jennings shall meet with appropriate representatives of the OLR to discuss, negotiate in good faith, and reach a plan for repayment or settlement of the $397,680, plus interest,

357

to members of his former law firm, the malpractice insurer, and DSI, when his court-ordered restitution to ESOT is completed;

¶ 4.   . Attorney Jennings shall maintain the insurance policy now in effect on his life, naming the members of his former law firm as beneficiaries, until his obligations are paid in full or settled, and provide the OLR proof of compliance with this condition within 30 days;

¶ 5.   . Attorney Jennings shall cooperate fully with any review of this matter that may be conducted by any entity appointed by the court to undertake such review;

¶ 6.   . Within 60 days of the date of this order, Attorney Jennings shall meet with the appropriate representative of the OLR to review, discuss, and arrange for the terms of payment of costs of this and his earlier disciplinary proceedings.[13]

¶ 48. We recognize that Attorney Jennings' former law firm, the malpractice insurer, and DSI, as well as his own family, may never be fully repaid.[14] Nonetheless, we determine that a continuing effort toward restitution, to the extent he is financially able, is necessary to demonstrate Attorney Jennings' attitude and understanding of the ethical standards required of members of the bar. We conclude that compliance with the above conditions, together with the evidence of record, fulfill the demands of SCR 22.29(4) and (4m). We grant Attorney Jennings' petition for reinstatement and award costs to the OLR in the sum of $5,465.39.

---

[13] The OLR has filed its statement of costs in this proceeding, totaling $5,465.39. Attorney Jennings has filed no objection to the costs.

[14] We leave to Attorney Jennings and his family members the resolution of his indebtedness to his mother's trust.

¶ 49.   IT IS ORDERED that the petition for reinstatement is granted and the license of David V. Jennings III to practice law in Wisconsin is conditionally reinstated effective the date of this order.

¶ 50.   IT IS FURTHER ORDERED that the conditions set forth in this order, including compliance with the current Continuing Legal Education requirements, are imposed on the license of David V. Jennings III to practice law in Wisconsin. If he fails to comply with the conditions required by this order and absent a showing to this court of his inability to do so, the license of David V. Jennings III to practice law in Wisconsin shall be suspended until further order of the court.

¶ 51. DAVID T. PROSSER, J., dissents.