ANN WALSH BRADLEY, J.
¶ 70. (dissenting.) In an attorney reinstatement proceeding, the referee is the finder of fact. It is the responsibility of the referee to scrutinize and to weigh the testimony of the witnesses and to determine the effect of the evidence as a whole. We are to defer to the referee's assessment of the credibility of witnesses. In re Disciplinary Proceedings Against David V. Jennings, III, 2011 WI 45, ¶ 39, 334 Wis. 2d 335, 801 N.W.2d 304.
¶ 71. The majority correctly sets forth the standard of review in reinstatement proceedings: we do *296 not overturn a referee's findings of fact unless they are clearly erroneous. Per curiam, ¶ 3. Nevertheless, the majority seems to ignore it. In rejecting the referee's "strong" recommendation that Balistrieri's license be reinstated, the majority fails to adequately explain why the referee's findings are clearly erroneous. Instead, it retries the case and reassesses credibility.
¶ 72. In giving the requisite deference to the role of the referee as the trier of fact and in correctly applying the standard of review, I conclude that the referee's findings are not clearly erroneous. I would accept the referee's findings and grant Balistrieri's reinstatement petition.
¶ 73. During the three days of the evidentiary hearing, the referee listened to live testimony from 13 "distinguished lawyer[] and non-lawyer[]" witnesses who supported Attorney Balistrieri's reinstatement. Referee Report, ¶ 27. The OLR examined Balistrieri adversely and called just one witness. In addition to the live testimony, the referee received seven letters in support of reinstatement from people who did not testify at the hearing. Balistrieri's sister wrote two letters opposing reinstatement. After hearing all of the testimony and reading all of the letters, the referee "strongly" recommended that Balistrieri's petition for reinstatement be granted. Referee report, ¶ 47. The OLR did not appeal the referee's recommendation.
¶ 74. The referee found that Balistrieri had proven by clear, satisfactory, and convincing evidence that he had met the criteria for reinstatement set forth in SCRs 22.29(4)(a)-(g) and 22.31(l)(a). The referee found that (1) he sincerely desires to have his license reinstated, (2) he has not practiced law during the period of his suspension and revocation, (3) he has complied with the terms of the suspension and revoca *297 tion orders, (4) he has maintained competence and learning in the law, (5) he has demonstrated that he has the moral character to practice law in this state, (6) his conduct since the revocation of his license has been exemplary and above reproach, (7) he has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with them, and (8) he can be safely recommended as a person fit to represent clients and to aid in the administration of justice in this state.
¶ 75. The majority, however, states that it is "not persuaded." In reassessing credibility, the majority asserts that the "record reveals a pattern of a lack of acceptance of responsibility over the years that have passed since Attorney Balistrieri's conviction." Per curiam, ¶ 22. It cites Balistrieri's response to BAPR's recommendation against reinstatement in 1995 and his answer to a question in a 2002 deposition. Id., ¶¶ 22-23. The majority grudgingly notes that Balistrieri testified he "made a mistake," but then quotes Balistrieri's testimony that "from my perspective, I really didn't do anything." Id., ¶ 25.
¶ 76. The referee wrote that in the 1996 reinstatement proceeding, "one sees a man who by his own admission 'was angry and felt cheated and felt [he] had been handed a raw deal.'" The referee quoted Balistrieri's testimony to show that "[t]oday, Balistrieri sees things differently:
You know, the judgment of the court was the judgment of the court, which I accept, you know. I was sentenced to a prison term which I served. I don't have that hostility or that feeling of being cheated or of being treated unfairly. I accept all that. And I made a promise to myself two years ago to drop all the anger, to drop all the resentment, and to accept things as they are, to *298 recognize that if the court found that, then that was a justified determination, and I must bear the penalty for it. You know, it was nobody's fault but my own. I made a mistake - people are not perfect - and I paid for it. And now I hope to rehabilitate in the last years of my life my career, and my reputation.
Referee report, ¶ 26, quoting Tr. p. 476.
¶ 77. The referee further explained that the record in this reinstatement proceeding was profoundly different than the record in a prior reinstatement proceeding. Thirteen "distinguished lawyers and non-lawyers" testified in support of Balistrieri's reinstatement and seven more wrote letters supporting reinstatement. They all believed he had the moral character necessary to practice law and that he met the criteria for reinstatement. The referee wrote:
"[T]he record in this 2012 proceeding stands in stark contrast to the record in the 1996 reinstatement proceeding. In 1996, Balistrieri and his brother were the only live witnesses. In 2012, thirteen distinguished lawyers and non-lawyers testified live in support of Balistrieri's petition. In 1996, the U.S. Attorney, the Wisconsin Attorney General and the Milwaukee District Attorney all wrote letters opposing reinstatement. In 2012, only Balistrieri's estranged sister wrote two letters in opposition. Besides the thirteen attorneys who testified, seven more wrote letters in support of Balistrieri's current petition. In short, the record in 2012 is most impressive and overwhelmingly supports reinstatement."
Referee Report, ¶ 27.
¶ 78. In finding that Balistrieri had demonstrated by clear, satisfactory, and convincing evidence that he met the criteria for reinstatement set forth in SCR 22.31, the referee summarized the oral and written *299 statements made in support of Balistrieri's reinstatement. Below is a mere sampling of some of those statements. They represent statements from some of the most distinguished attorneys in this state.
• Attorney 1: "Since [Balistrieri's] criminal conviction, he has led an exemplary life without any further involvement or any negative influence.. .. Without reservation, I completely and fully endorse and recommend his reinstatement of his law license."
• Attorney 2: "I strongly recommend that [Balistrieri] he admitted to the State Bar of Wisconsin. He is intelligent, trustworthy and honest. He works hard at every task he assumes and, even though not practicing law, continues to recognize lawyers' duties to clients and to the profession."
• Attorney 3: "I highly recommend that you allow for [Balistrieri's] reinstatement. I am 100% confident that he will practice law in an utmost ethical manner .. .."
• Attorney 4: "I sincerely believe that it was a privilege for me to meet and work with Mr. Balistrieri and I highly recommend that he be reinstated. He is truly an asset to the legal profession."
¶ 79. Based upon the referee's credibility determinations and the weight he gave the witnesses' testimony, together with his findings of fact, I conclude there is only one proper result here: granting Balistrieri's petition for reinstatement. Accordingly, I respectfully dissent.