In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Stanley v. WOODARD, Attorney At Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY,
Complainant,

v.

Stanley V. WOODARD, Respondent.

In THE MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Stanley V. WOODARD, Attorney at Law.

OFFICE OF LAWYER REGULATION,
Complainant,

v.

Stanley V. WOODARD,
Respondent.

Supreme Court

*No. 1993AP1135–D, 1994AP1838–D & 1996AP884–D.*
*—Decided April 27, 2012.*

2012 WI 41

(Also reported in 812 N.W.2d 511.)

¶ 1. PER CURIAM. We review the report and recommendation of the referee, Lisa C. Goldman, that the license of Attorney Stanley V. Woodard to practice law in Wisconsin should be reinstated with certain specified conditions.[1] After fully reviewing this matter, we agree with the referee that Attorney Woodard's license should be reinstated and that conditions should be placed upon his practice of law in this state. We conclude, however, that the referee's suggested conditions on Attorney Woodard's return to the practice of law must be strengthened and clarified. We also determine that Attorney Woodard should be required to pay the costs of this reinstatement proceeding, which were $5,263.16 as of October 17, 2011.

---

[1] Because neither party appealed from the referee's report and recommendation, our review proceeds under SCR 22.33(3), which provides that "[i]f no appeal is timely filed, the supreme court shall review the referee's report, order reinstatement, with or without conditions, deny reinstatement, or order the parties to file briefs in the matter."

¶ 2. The standards that apply to all petitions seeking reinstatement after a disciplinary suspension or revocation are set forth in SCR 22.31(1).[2] In particular, the petitioning attorney must demonstrate by clear, satisfactory, and convincing evidence that he or she has the moral character necessary to practice law in this state, that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that the attorney has complied fully with the terms of the suspension or revocation order and the requirements of SCR 22.26. In addition, SCR 22.31(1)(c) incorporates the statements that a petition for reinstatement must contain pursuant to SCR 22.29(4)(a)-[(4m)].[3] Thus, the petitioning attorney must demonstrate that the re-

---

[2] SCR 22.31(1) states:

The petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:

(a) That he or she has the moral character to practice law in Wisconsin.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to [(4m)] and 22.29(5), are substantiated.

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

[3] SCR 22.29(4)(a) through (4m) provides that a petition for reinstatement shall show all of the following:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

251

quired representations in the reinstatement petition are substantiated.

¶ 3. The following facts are taken from the referee's report. No party has alleged that any of these factual findings are erroneous.

¶ 4. Attorney Woodard was admitted to the practice of law in Wisconsin in 1977. He held a number of different positions during the time that he possessed an active license to practice law. He was a staff attorney for Legal Action of Wisconsin, a staff attorney with the U.S. Environmental Protection Agency, and an assistant

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(4m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

district attorney in Milwaukee County. After a two-year stint in private practice, Attorney Woodard spent eight years in the Madison office of the State Public Defender. He then worked in his own firm for approximately three years.

¶ 5. Attorney Woodard has an extensive disciplinary history that includes six separate impositions of public discipline over an 11–year period.

¶ 6. Attorney Woodard's first disciplinary matters resulted in public reprimands in 1985 and 1986 for neglecting client matters, failing to respond promptly to requests for information from the Board of Attorneys Professional Responsibility (BAPR), the predecessor to the Office of Lawyer Regulation (OLR); failing to deposit client funds in a trust account; and misrepresenting the location of those client funds.

¶ 7. In 1989 Attorney Woodard's license was suspended for a period of 60 days due to his failure to file income tax returns and his failure to respond to inquiries from BAPR and the Department of Revenue. *In re Disciplinary Proceedings Against Woodard,* 150 Wis. 2d 594, 441 N.W.2d 750 (1989).

¶ 8. In 1994 this court suspended Attorney Woodard's license for three years. His misconduct in that case involved five separate clients and stemmed from (1) assisting the girlfriend of a client to violate the terms of the girlfriend's probation by delivering two packages from the girlfriend to the client in jail, one of which contained dangerous, banned material; (2) failing to attend to client matters; (3) failing to prepare for trial; (4) failing to act with diligence; (5) failing to keep a client properly informed; (6) failing to return a client's file upon request; (7) failing to refund unearned fees; (8) failing to appear at scheduled court hearings in three criminal matters; and (9) failing to cooperate with

BAPR's investigations. *In re Disciplinary Proceedings Against Woodard,* 183 Wis. 2d 575, 515 N.W.2d 700 (1994). In this 1994 proceeding, Attorney Woodard submitted a psychiatrist's report that stated that Attorney Woodard suffered from major depression and dysthymia.[4] The referee found that Attorney Woodard did suffer from those conditions, but concluded that they did not cause his misconduct and rejected Attorney Woodard's request that the disciplinary proceeding be converted to a medical incapacity proceeding. The court adopted the referee's recommendation that the reinstatement of Attorney Woodard's license should be conditioned on Attorney Woodard establishing that he no longer suffers from the medical incapacity that he had asserted in the proceeding. *Id.,* 183 Wis. 2d at 585–86. Attorney Woodard's license has not been reinstated since the time of this order.

¶ 9.    This court imposed another one-year suspension in 1995 for Attorney Woodard's misconduct in two more representations. His misconduct in those matters included failing to return a client's file, failing to refund unearned fees, failing to communicate with a client about not pursuing a criminal sentencing matter and not refunding a portion of the fees, and failing to communicate with BAPR in response to its investigations. *In re Disciplinary Proceedings Against Woodard,* 190 Wis. 2d 487, 526 N.W.2d 510 (1995).

¶ 10.    After Attorney Woodard stated that he could not successfully defend against BAPR's allegations of additional misconduct, this court granted Attorney Woodard's petition for the consensual revocation of his

---

[4] Dysthymia has been defined as "morbid anxiety and depression accompanied by obsession." *Webster's Third New Int'l Dictionary Unabridged* 712 (1981).

license to practice law in Wisconsin in 1996. *In re Disciplinary Proceedings Against Woodard,* 200 Wis. 2d 66, 546 N.W.2d 162 (1996). His admitted misconduct in that proceeding included using client trust account funds to pay for personal expenses, failing to maintain required trust account records, failing to document the purpose of trust account checks made payable to himself, and failing to account to a client for funds that Attorney Woodard had received and disbursed on the client's behalf.

¶ 11. Since the revocation of his law license, Attorney Woodard has worked in a number of jobs. He has taught at a local college, worked for the Boys and Girls Club, and worked for the University of Wisconsin. His second most-recent position was with the University of Wisconsin Family Voices program, where he worked for three years. His current position is the program director for the Lussier Community Education Center in Madison. He has also volunteered with a number of community organizations.

¶ 12. The referee's report discussed a number of issues and concerns regarding Attorney Woodard's reinstatement to the practice of law in this state. She noted that having a license to practice law is a privilege that demands behavior above reproach so that an attorney can be trusted and respected by members of the community. She pointed out that Attorney Woodard's prior conduct had not met that standard, as he had engaged in "dishonest, arrogant and criminal behavior." Specifically, she noted that Attorney Woodard had on multiple occasions taken money that did not belong to him and had refused to have meaningful discussions with his clients regarding financial issues. Moreover, Attorney Woodard had abused his special status as an attorney to gain access to inmates in the

255

jail when he had carried dangerous, banned items into the jail, which could have led to catastrophic results.

¶ 13. The referee contrasted the conduct that resulted in Attorney Woodard's multiple suspensions and revocation with his conduct since the revocation of his law license in 1996. She stated that since that time Attorney Woodard "has engaged in many activities that show a genuine desire to live a life demonstrated by good conduct." He has maintained steady employment to contribute to his family's income. He has also excelled as a volunteer for various causes. Indeed, the referee noted that Attorney Woodard had received awards from a number of volunteer and community organizations, including, among others, the American Red Cross, the Madison Urban Ministry, the NAACP, and the Boys and Girls Club of Dane County. In addition, Attorney Woodard submitted a host of letters from other lawyers and members of the community that spoke highly of his legal abilities and his volunteer contributions.

¶ 14. The referee also addressed a couple of concerns raised by the Office of Lawyer Regulation (OLR) and her own consideration of the matter. First, the referee noted that Attorney Woodard had faced the need to repay multiple debts stemming from his actions prior to the revocation of his law license and otherwise.

¶ 15. Although this court's prior disciplinary orders did not expressly require Attorney Woodard to pay restitution, there were three former clients to whom Attorney Woodard owed money. The referee found that two of the clients had forgiven Attorney Woodard's debts. One such client even spoke at the public hearing in favor of the reinstatement of Attorney Woodard's license.

¶ 16. The third former client, R.F., had apparently not forgiven Attorney Woodard's debt nor had Attorney Woodard repaid the debt to R.F. prior to seeking rein-

statement. The referee indicated that she was wary of Attorney Woodard's handling of this matter. Rather than fully repay the debt, which the referee believed was at least $1,500, or make arrangements to repay the debt over time, Attorney Woodard had recently sent a check for $500 to R.F. with a notation on the check and in a letter that the check would be a full and final settlement. R.F. cashed the check but also sent a letter disputing that the $500 payment had constituted a final settlement of the debt. R.F. did not appear at the reinstatement hearing or send a letter to the referee, however, to contend that Attorney Woodard still owed him any money. Ultimately, although the referee questioned whether Attorney Woodard's attempt to have a partial payment constitute a final settlement of a debt to a client missed the need to demonstrate good conduct, the referee did not believe that this situation required that Attorney Woodard's reinstatement petition be denied.

¶ 17. The referee also discussed the condition on Attorney Woodard's reinstatement set forth in this court's 1994 suspension order. Specifically, this court ruled that in order to have his license reinstated, Attorney Woodard needed to "establish that he no longer suffers from the medical incapacity" he asserted in that disciplinary proceeding (depression and dysthymia). The referee properly stated that Attorney Woodard bore the burden to prove this fact by clear, satisfactory, and convincing evidence.

¶ 18. The referee noted that Attorney Woodard had presented only a single letter from a social worker, which stated that Attorney Woodard no longer suffers from depression or dysthymia to a degree which would render him incapable of performing the duties of an attorney. The referee concluded that Attorney Woodard

really needed to show that he was "fit" to resume the practice of law. Although the referee acknowledged that this was not a medical incapacity reinstatement proceeding, she pointed to SCR 22.36, which relates to reinstatement following a medical incapacity suspension, as a basis to conclude that "fit" is "sufficiently broad to imply a state of preparedness to render competent legal services; that is, to be prepared to provide the measure of expertise to ensure the attorney may be safely recommended to the community as a person to be consulted by and to represent others in legal matters." *In re Medical Incapacity Proceedings Against Schlieve,* 2010 WI 22, ¶ 24, 323 Wis. 2d 654, 780 N.W.2d 516. The referee concluded that an opinion from a psychiatrist or a psychologist regarding the lack of any medical incapacity was not required to show such a state of preparedness, especially where the OLR had not disputed the current lack of a medical incapacity or objected to the referee relying on the opinion of the social worker. The referee emphasized that the OLR had agreed that if Attorney Woodard had been suffering from a major clinical depression, he would not have been able to hold the employment positions he has held in recent years. Consequently, the referee concluded that Attorney Woodard had sufficiently demonstrated that he no longer suffers from a medical incapacity related to a major depression or dysthymia.

¶ 19. Ultimately, after considering the documentary materials in the reinstatement file and the testimony submitted at the reinstatement hearing, the referee concluded that Attorney Woodard had complied with each of this court's prior disciplinary orders and the requirements imposed by SCR 22.26 on individuals whose licenses to practice law in Wisconsin have been suspended or revoked. The referee further concluded

that Attorney Woodard had satisfied all of the criteria for reinstatement set forth in SCR 22.29.

¶ 20.   Although the referee recommended that Attorney Woodard's license to practice law in this state be reinstated, she also recommended that three conditions be imposed on his return to the practice of law. First, she recommended that Attorney Woodard be required to contact the State Bar's Wisconsin Lawyers Assistance Program (WisLAP) and obtain a mentor attorney to assist him for the first two years following reinstatement.

¶ 21.   Second, she suggested that Attorney Woodard be required to obtain further continuing legal education regarding appropriate fee agreements and the requirements for maintaining a client trust account. She noted that many of the trust account rules have changed significantly since Attorney Woodard last practiced law. Since this was an area in which Attorney Woodard previously failed to meet his requirements, she believed that such required education would be appropriate to protect the public from "negligent office management mistakes."

¶ 22.   Finally, the referee recommended that Attorney Woodard be required to provide quarterly trust account and business accounting records to the OLR for a period of two years. These records should show what advance fees Attorney Woodard has received and where such client funds were deposited. The records to be provided should also include copies of Attorney Woodard's fee agreements with all of his privately retained clients.

¶ 23.   The standards for our review of reinstatement proceedings are similar to the standards we use for reviewing referee reports in disciplinary proceed-

ings. We do not overturn a referee's findings of fact unless they are clearly erroneous. On the other hand, we review a referee's legal conclusions, including whether the attorney has satisfied the criteria for reinstatement, on a de novo basis. *In re Disciplinary Proceedings Against Jennings,* 2011 WI 45, ¶ 39, 334 Wis. 2d 335, 801 N.W.2d 304; *In re Disciplinary Proceedings Against Gral,* 2010 WI 14, ¶ 22, 323 Wis. 2d 280, 779 N.W.2d 168.

¶ 24. As noted above, neither party has challenged the referee's factual findings, legal conclusions, or recommendation. After thoroughly reviewing this matter, we accept the referee's findings of fact. There is no dispute regarding generally what has occurred since the revocation of Attorney Woodard's license to practice law in Wisconsin in 1996. The evidence submitted shows that Attorney Woodard has been a productive member of the community and has engaged in extensive volunteer work.

¶ 25. We do find it necessary, however, to address two portions of the referee's report. First, in our 1994 decision suspending Attorney Woodard's license for three years, we did not transform that disciplinary proceeding into a medical incapacity proceeding, but we did condition the reinstatement of Attorney Woodard's license to practice law in Wisconsin on his demonstration that he no longer suffers from the medical incapacity (depression and dysthymia) he alleged in that proceeding. Attorney Woodard's license has never been reinstated since the time of that 1994 decision. Thus, he was required to satisfy that condition in this reinstatement proceeding.

¶ 26. The referee questioned whether Attorney Woodard's evidence was sufficient to satisfy this condi-

tion since, although he offered evidence from community members and other lawyers that he currently was capable of practicing law, the only evidence he presented that he no longer suffers from depression or dysthymia was a letter from a clinical social worker. The referee concluded that an opinion from a psychologist or psychiatrist regarding the existence or nonexistence of a medical incapacity was not required, and that the social worker's opinion was sufficient.

¶ 27. We need not decide whether a social worker is qualified to render an opinion regarding the presence or absence of medical/psychological conditions such as depression or dysthymia, and the impact of such conditions on an individual's ability to practice law. Here, the OLR did not object to the referee's reliance on the social worker's opinion and conceded that Attorney Woodard had satisfied the condition, in part by the evidence of his holding responsible employment positions since the time of his suspension and subsequent revocation. Moreover, the OLR did not appeal from the referee's report and recommendation. Thus, given the OLR's concession, we conclude that Attorney Woodard has sufficiently demonstrated that he no longer suffers from the medical/psychological conditions he raised as a potential basis for incapacity in the 1994 disciplinary proceeding.

¶ 28. The second item we address is Attorney Woodard's debt to his former client R.F. R.F. was a grievant in one of Attorney Woodard's prior disciplinary proceedings. *See In re Disciplinary Proceedings Against Woodard,* 190 Wis. 2d at 490–92. In that proceeding, Attorney Woodard and BAPR stipulated that R.F. had paid $3,000 to Attorney Woodard. There was, however, a disagreement as to what the $3,000 was supposed to cover. R.F. believed that the $3,000 was a flat fee that

covered representation for both his sentencing hearing and any appeal. The stipulation states that Attorney Woodard sent a letter to R.F. stating that the $3,000 covered only the sentencing hearing and his review of the trial transcripts for any appellate issues, but not the actual prosecution of any appeal. In any event, it is undisputed that Attorney Woodard did not go forward with any appeal on R.F.'s behalf. Based on this stipulation, the court concluded that Attorney Woodard had, among other things, failed to communicate with his client, failed to give notice that he was not pursuing an appeal on R.F.'s behalf, and failed to refund an unearned advance payment of fees. At that time, however, this court did not impose a specific restitution obligation on Attorney Woodard.

¶ 29. Whether or not a restitution obligation is explicitly imposed in a disciplinary opinion and order, SCR 22.29(4m) requires that an attorney petitioning for reinstatement must show by clear and convincing evidence that the attorney has made restitution to or settled the claims of all persons who were injured or harmed by the attorney's misconduct, or to provide an explanation for the failure to do so.

¶ 30. Here the referee found that there was a minimum debt of $1,500 owed by Attorney Woodard to R.F. This is supported by Attorney Woodard's acknowledgement at the reinstatement hearing that he did receive $1,500 from R.F., that he never pursued an appeal on R.F.'s behalf, and that he owed R.F. $1,500. On the other hand, Attorney Woodard testified at the reinstatement hearing that he disputed R.F.'s claims that Attorney Woodard had received more than $1,500 and still owed him anywhere from $1,500 to $2,500. Attorney Woodard claimed that he had received only

$1,500 as a flat fee and that R.F. was supposed to pay an additional $3,000 for the cost of obtaining trial transcripts, but never did so.

¶ 31.    In any event, rather than return even the $1,500 that he had admittedly received from R.F. and owed to him or make arrangements to pay that amount over time, Attorney Woodard attempted to avoid paying a large portion of the debt by sending a $500 partial payment to R.F. with a notation on the check and in a separate letter stating that the payment constituted a full and final settlement of the matter. R.F. cashed the check sent by Attorney Woodard, but also responded in a subsequent letter that he disputed that the $500 payment constituted a final settlement of the full debt.

¶ 32.    Attorney Woodard claimed at the reinstatement hearing that he viewed R.F.'s cashing of his $500 check as an accord and satisfaction, which would appear to constitute a "settlement" of the claim of a person harmed by Attorney Woodard's misconduct under SCR 22.29(4m). We choose not to decide in this reinstatement proceeding, however, whether the cashing of the check constituted a valid accord and satisfaction, and thus a "settlement" for purposes of SCR 22.29(4m).

██

¶ 33.    Even if Attorney Woodard's partial payment legally constitutes an accord and satisfaction, we are troubled by this attempt—after more than 15 years of non-action and on the eve of a reinstatement proceeding—to avoid making full restitution through sending a check to an unrepresented former client with a notation of a full and final settlement in order to claim an accord and satisfaction in the reinstatement proceeding. All attorneys have a professional obligation, in exchange for being granted the privilege to practice law in this state, to put the interests of their clients above

their own interests. This includes putting the client's interest in receiving a refund of an unearned fee above the lawyer's own financial interests. This is a precept that Attorney Woodard will have to follow as he returns to the practice of law.

■

¶ 34. Although this court did not impose a restitution obligation in the original disciplinary proceeding, we now require Attorney Woodard to make an additional restitution payment to R.F. as a condition of his reinstatement. The stipulation in the original disciplinary proceeding provided that Attorney Woodard had received $3,000 and had provided some services to R.F. by representing him at his sentencing hearing. On the other hand, Attorney Woodard now essentially claims that he agreed to the stipulation in the original disciplinary case only due to his depressed state at the time and that he actually received only $1,500 from R.F. Even if Attorney Woodard did receive only $1,500 from R.F. and did represent him at the sentencing hearing, we now conclude that Attorney Woodard should return that entire amount as a condition of his reinstatement. Because he has already sent a $500 payment to R.F., we will require him to make an additional payment of $1,000 to R.F. We consider this additional restitution payment as satisfying Attorney Woodard's obligation under SCR 22.29(4m).

¶ 35. Having resolved these two matters, we conclude that the facts as found by the referee support the legal conclusion that Attorney Woodard has satisfied the criteria for the reinstatement of his license to practice law in Wisconsin by clear and convincing evidence.

■

¶ 36. Although we determine that Attorney Woodard has now satisfied the criteria for reinstatement,

we agree with the referee that some additional conditions on Attorney Woodard's return to the practice of law are appropriate. We are particularly concerned about Attorney Woodard's stated intention to practice by himself in his own law firm or in conjunction with just his wife. As the referee noted, the rules regarding the handling of client trust funds and advance fees have changed considerably in the more than 15 years that have passed since Attorney Woodard last practiced law. Moreover, much of Attorney Woodard's misconduct involved violations of the rules governing client trust accounts and the financial side of attorney/client relationships. We are not convinced that allowing Attorney Woodard to practice by himself in his own firm with only an outside mentor attorney or with just his wife sufficiently ensures Attorney Woodard's successful reintegration into the practice of law. Consequently, we determine that in order to ensure that Attorney Woodard does not lapse into a repetition of the misconduct that led to his suspension and revocation, his first three years of practice following reinstatement should be in a law firm or organization where he is subject to the direct supervision of another attorney. Further, in order to eliminate the temptation of merely relying on the trust that exists between spouses rather than providing direct supervision, we further direct that the supervising attorney must be someone other than Attorney Woodard's spouse. We also agree with the referee that continuing legal education regarding fee agreements and client trust accounts is appropriate. We clarify that Attorney Woodard must complete seven (7) hours of classes dealing with those topics, as well as the subject of law office management. We also clarify the items that Attorney Woodard must disclose to the OLR.

¶ 37. Finally, we turn to the issue of the costs of this reinstatement proceeding. Attorney Woodard has not filed an objection to the OLR's statement of costs, and we do not find a basis to depart from our general practice of imposing full costs in both disciplinary and reinstatement proceedings. Consequently, we impose the full costs of this proceeding on Attorney Woodard.

¶ 38. IT IS ORDERED that the petition for reinstatement of the license of Stanley V. Woodard to practice law in Wisconsin is granted, effective the date of this order.

¶ 39. IT IS FURTHER ORDERED that the reinstatement of Stanley V. Woodard's license to practice law is subject to the following conditions:

A. During the first three-year period after his reinstatement, Attorney Woodard shall practice law in Wisconsin only in a law firm or organizational setting and shall be subject to the direct supervisory authority of a supervising attorney, who shall not be his spouse, pursuant to the requirements of SCR 20:5.1(b).

B. Within six months following reinstatement, Attorney Woodard shall attend a minimum of seven (7) hours of continuing legal education concerning the subjects of fee agreements, client trust account management, and law office management. Attorney Woodard shall provide certificates of attendance for such seminars to the Office of Lawyer Regulation.

C. For a period of two years following reinstatement, Attorney Woodard shall, on a quarterly basis, provide or open for inspection to the Office of Lawyer Regulation all trust account and business accounting records related to Attorney Woodard's practice of law. Such records shall show, among other things, what advance fees or client funds have been received by Attorney Woodard, where such advance fees or client funds have

been deposited, and whether such advance fees or client funds have been disbursed and to whom they have been disbursed. Such records shall include copies of all client retainer or fee agreements negotiated or executed by Attorney Woodard.

¶ 40. IT IS FURTHER ORDERED that within 90 days of the date of this order, Stanley V. Woodard shall pay restitution to R.F. in the additional amount of $1,000 and shall provide evidence of such payment to the Office of Lawyer Regulation. If this additional restitution payment is not paid within the time specified, the Office of Lawyer Regulation is authorized to move this court for a further suspension of the license of Stanley V. Woodard to practice law in Wisconsin.

¶ 41. IT IS FURTHER ORDERED that within 120 days of the date of this order, Stanley V. Woodard shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and Stanley V. Woodard has not negotiated a resolution as to the payment of the costs over time with the Office of Lawyer Regulation, the Office of Lawyer Regulation is authorized to move this court for a further suspension of the license of Stanley V. Woodard to practice law in Wisconsin.

¶ 42. IT IS FURTHER ORDERED that the $1,000 additional restitution payment to R.F. shall be paid prior to the payment of the costs of this proceeding.