# Supreme Court of Wisconsin

| | |
|---|---|
| CASE No.: | 2016AP85-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Daniel Parks, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>    Complainant-Respondent,<br>  v.<br>Daniel Parks,<br>    Respondent-Appellant. |

DISCIPLINARY PROCEEDINGS AGAINST PARKS

| | |
|---|---|
| OPINION FILED: | February 11, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

Per Curiam. HAGEDRON, J., dissents, joined by REBECCA GRASSL BRADLEY, J.

NOT PARTICIPATING:

ATTORNEYS:

For the respondent-appellant, there were briefs filed by *Daniel Parks, Peyton B. Engel*, and *Hurley, Burish & Stanton, S.C.*, Madison.

For the complainant-respondent, there was a brief filed by *Brenda K. Sunby*, Wausau.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP85-D

STATE OF WISCONSIN                    :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Daniel Parks, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complaint-Respondent,**

    **v.**

**Daniel Parks,**

        **Respondent-Appellant.**

**FILED**

**FEB 11, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY reinstatement proceeding. *Reinstatement denied.*

¶1     PER CURIAM.     We review a report filed by Referee John Nicholas Schweitzer, recommending that the court reinstate Attorney Daniel Parks' license to practice law in Wisconsin. After careful review, we disagree with the recommendation and we deny Attorney Parks' reinstatement petition. We direct Attorney Parks to pay the full costs of this reinstatement proceeding, which are $6,370.43 as of July 16, 2020.

¶2     Attorney Parks was admitted to the practice of law in Wisconsin in September 1991. In 2013, Attorney Parks announced he was leaving the law firm where he had been employed for 18

years. Following Attorney Parks' departure, the law firm filed a grievance with the Office of Lawyer Regulation (OLR) stating, among other things, that it had discovered that Attorney Parks had performed unauthorized legal work "on the side" ("non-firm work") while employed by the firm. An investigation ensued and in 2016, the OLR filed a disciplinary complaint against Attorney Parks, alleging 19 counts of professional misconduct and seeking a two-year license suspension.

¶3 Following extensive litigation, amended complaints, and an appeal, this court accepted the referee's conclusion that Attorney Parks had committed eight of 14 alleged counts of misconduct.[1] See In re Disciplinary Proceedings Against Parks, 2018 WI 110, 384 Wis. 2d 635, 920 N.W.2d 505. We suspended Attorney Parks' law license for 14 months for:

- Earning fees from non-firm legal work while employed by the firm, in violation of Supreme Court Rule (SCR) 20:8.4(c) and SCR 20:8.4(f);

- Arranging for two clients to perform work for him in exchange for a reduction of legal fees and otherwise reducing attorney fees without the firm's permission, in violation of SCR 20:8.4(c) and SCR 20:8.4(f);

- Accepting an unauthorized $5,000 "gift" from two clients in violation of SCR 20:8.4(c) and SCR 20:8.4(f);

---

[1] The OLR twice amended its complaint, dismissing five counts.

2

- Working on client files on an unsecured offsite computer belonging to another person, in violation of SCR 20:1.6(a); and

- Obtaining two signatures on a "release" designed to limit Attorney Parks' liability, without properly clarifying his role in the matter in violation of SCR 20:8.4(c).[2]

¶4 In January 2020, Attorney Parks filed a petition for reinstatement.[3] The OLR opposed Attorney Parks' petition for three primary reasons: (1) the OLR had learned of an action involving Attorney Parks' insurance license; (2) the OLR had concerns about aspects of Attorney Parks' 2018 tax returns; and (3) the OLR argued that Attorney Parks' failure to reimburse his

---

[2] We dismissed five counts of alleged misconduct. Several of these counts alleged improper dealings with a friend and client, C.D., involving a personal loan, SCR 20:1.8(a) and (b); providing her with a form for a will, SCR 20:1.7(a)(2); transferring the title of a vehicle, SCR 20:8.4(c); arranging for a rent payment, SCR 20:8.4(c); and failure to clarify the scope of his representation of two relatives of C.D., SCR 20:1.7(a)(2). A claim of noncooperation with the OLR, SCR 22.03(2) and (6), enforceable via SCR 20:8.4(h), was also dismissed.

[3] By order effective January 1, 2021, this court amended a number of supreme court rules pertaining to lawyer disciplinary procedures, including rules governing reinstatement from disciplinary suspension, SCR 22.29 through 22.33. S. Ct. Order 19-06, 19-07, 19-08, 19-09, 19-10, 19-11, and 19-12, 2020 WI 62 (issued June 30, 2020, eff. Jan. 1, 2021). The rules amended pursuant to that order apply to reinstatement proceedings commenced after January 1, 2021. Therefore, this reinstatement proceeding is governed by the prior rules, in effect at the time of the reinstatement petition.

former firm and two clients reflected adversely on his request for reinstatement.

¶5 On May 29, 2020, the parties filed a partial stipulation regarding Attorney Parks' insurance license. The referee conducted an evidentiary hearing on the reinstatement petition in June 2020. On June 24, 2020, the referee filed a report recommending that this court grant Attorney Parks' reinstatement petition and impose the costs of the reinstatement proceeding on Attorney Parks. Neither party appealed from the referee's recommendation so we consider this matter pursuant to SCR 22.33(3).[4]

¶6 The standards that apply to a petition for reinstatement after a disciplinary suspension are set forth in SCR 22.31(1).[5] The petitioning attorney must demonstrate by

---

[4] SCR 22.33(3) provides: "If no appeal is timely filed, the supreme court shall review the referee's report, order reinstatement, with or without conditions, deny reinstatement, or order the parties to file briefs in the matter."

[5] SCR 22.31(1) provides the petitioner has the burden of demonstrating, by clear, satisfactory, and convincing evidence, all of the following:

(a) That he or she has the moral character to practice law in Wisconsin.

(b) That his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest.

(c) That his or her representations in the petition, including the representations required by SCR 22.29(4)(a) to (m) and 22.29(5), are substantiated.

clear, satisfactory, and convincing evidence that the attorney has the moral character necessary to practice law in this state, that the attorney's resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that the attorney has complied fully with the terms of the suspension or revocation order and the requirements of SCR 22.26. In addition, SCR 22.31(1) incorporates the statements that a petition for reinstatement must contain pursuant to SCR 22.29(4)(a)-(k) and (4m).[6] Thus,

---

(d) That he or she has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

[6] SCR 22.29(4)(a)-(k) and (4m) provides that a petition for reinstatement shall show all of the following:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

5

the petitioning attorney needs to demonstrate that the required representations in the reinstatement petition are substantiated.

¶7  On review, we accept a referee's findings of fact unless they are clearly erroneous.  We review a referee's legal conclusions, including whether the attorney has satisfied the criteria for reinstatement, on a de novo basis.  See In re Disciplinary Proceedings Against Jennings, 2011 WI 45, ¶39, 334 Wis. 2d 335, 801 N.W.2d 304; In re Disciplinary Proceedings Against Gral, 2010 WI 14, ¶22, 323 Wis. 2d 280, 779 N.W.2d 168. We benefit from the referee's findings and conclusions, particularly when, as here, the referee has provided us with such a thoughtful and well-structured report.  However, we are

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(4m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

not bound by the referee's recommendation or by the OLR's restitution policy. In re Disciplinary Proceedings Against Nussburger, 2009 WI 103, 321 Wis. 2d 576, 775 N.W.2d 525; see also In re Disciplinary Proceedings Against Langer, 213 Wis. 2d 125, 569 N.W.2d 465 (1997). The ultimate determination of who may practice law in Wisconsin remains with this court. Here, we accept the referee's findings, but we reach a different conclusion of law with respect to SCRs 22.29(4)(e),(4m) and 22.31(1)(a).

¶8 The OLR did not dispute and the referee found that Attorney Parks satisfied a number of the requirements for reinstatement. He demonstrated that he desires to have his license reinstated, SCR 22.29(4)(a); that he has not practiced law during the period of his suspension, SCR 22.29(4)(b); that he has complied fully with the terms of the order of suspension and will continue to comply with them until his license is reinstated, SCR 22.29(4)(c);[7] and that he has maintained competence and learning in the law, SCR 22.29(4)(d).[8] The referee found that Attorney Parks fully complied with the requirements set forth in SCR 22.26 as required by

---

[7] The referee observed that although Attorney Parks has not paid off the costs of the underlying disciplinary proceeding, he entered into and is complying with a payment plan.

[8] The Board of Bar Examiners filed a memorandum stating that Attorney Parks "is currently in compliance with the court's CLE and EPR requirements for reinstatement." The record reflects Attorney Parks' successful completion of numerous continuing legal education classes.

SCR 22.29(4)(h); explained how he would use his license if reinstated, SCR 22.29(4)(j); and outlined his activities during his suspension, SCR 22.29(4)(k). We accept the referee's findings and conclusions with respect to these criteria.

¶9 The more challenging questions involved whether Attorney Parks has the moral character to practice law in Wisconsin, as required by SCR 22.31(1)(a), and whether he met his burden with respect to SCR 22.29(4)(e) (requiring that the petitioner's conduct since the suspension has been exemplary and above reproach); SCR 22.29(4)(f) (requiring that the petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards); SCR 22.29(4)(g) (requiring that the petitioner can safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts). Another concern pertains to Attorney Parks' obligation to make restitution to or settle all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin Lawyers' Fund for Client Protection for all payments made from that fund, or, if not his explanation of the failure or inability to do so. SCR 22.29(4m). Failure to satisfy this criterion bears, in turn, on whether a petitioner has the moral character to practice law in Wisconsin. SCR 22.31(1)(a).

## I.   THE INSURANCE LICENSE INVESTIGATION

¶10  The referee's findings with respect to the insurance license matter derive from a partial stipulation executed by the parties as well as evidence from the reinstatement hearing.  In 1998, Attorney Parks was licensed by the Office of the Commissioner of Insurance (OCI) as a Wisconsin resident insurance intermediary, which authorized him to sell life, fixed and variable annuities, accident and health insurance.  To hold this particular license, Wisconsin residents must maintain active Financial Industry Regulatory Authority (FINRA) Series 6 or 7 Registration (FINRA Registration) and provide OCI with a "Central Registration Depository" number.

¶11  The parties stipulated that Attorney Parks was duly registered through April 2014.  However, from April 2014 to January 24, 2019, Attorney Parks did not have the appropriate FINRA registration.[9]  Yet, in his 2017 insurance license renewal application, Attorney Parks indicated that he was eligible to continue to hold the Variable Life/Variable Annuity lines of authority[10] and he failed to timely notify the OCI that he was ineligible to hold the Variable Life/Variable Annuity lines of authority due to the termination of his FINRA registration.[11]  He

---

[9] The OCI found that this oversight violated Wis. Stat. § 628.04(2) and Wis. Admin. Code § Ins. 6.59(4)(an).

[10] The OCI found that this representation violated Wis. Admin. Code § Ins. 6.59(5)(b) and (d)1 and 3.

[11] The OCI found that this oversight violated Wis. Stat. § 628.08.

also failed to disclose to the OCI the lawyer disciplinary proceeding that was then pending against him, as well as his business address.[12] Ultimately, Attorney Parks and the OCI resolved the insurance matter by stipulation. Attorney Parks consented to the revocation of his insurance license, the imposition of a forfeiture, and the condition that he not seek relicensure in the future.

¶12 At the reinstatement hearing Attorney Parks was questioned at length about this issue. Attorney Parks explained that when he obtained and later renewed his insurance license he sought guidance from an insurance professional, an individual who was a financial advisor and a regional vice-president for Primerica, for whom Attorney Parks worked at the time. Attorney Parks explained that in 2014, Primerica informed its agents that they considered estate planning to present a possible conflict of interest with certain types of insurance; anyone who was doing both should give one up. So, Attorney Parks opted to resign from Primerica in April 2014 in order to continue his estate planning practice.

¶13 Attorney Parks explained that as he was no longer associated with an insurance company he knew he could no longer

---

[12] The OCI found that this failure violated Wis. Stat. § 628.04(8) and Wis. Admin. Code §§ Ins. 6.59(5)(b), (d)(1), and 6.61(16)(a) and (d). Attorney Parks did not timely notify the OCI within 30 days of the formal complaint filed by OLR on January 12, 2016, or of this court's December 13, 2018 order. The OCI found that this violated Wis. Stat. § 628.08 and Wis. Admin. Code § Ins. 6.61(16)(a) and (d).

10

sell insurance or act as an insurance agent and he ceased doing so. It was not disputed that Attorney Parks has not engaged in the insurance business since October 2012. Attorney Parks testified that neither he nor the professional he consulted realized that he should have reported the termination of his appointment with Primerica to the OCI.

¶14 In 2017, Attorney Parks decided to renew his insurance license in order to maintain a hard-earned credential. He stated that he reviewed the renewal application with the individual mentioned above, and testified that neither of them interpreted a question on the license application as requiring him to report the then-pending OLR action. He testified that neither of them realized that because an insurance license in Wisconsin has a variable annuity component that remains intact even with a loss of FINRA Registration, Attorney Parks was impliedly asserting in his renewal application that he was still eligible to sell variable life and variable annuity products. The referee was satisfied with Attorney Parks' explanation and found that these violations were not intentional.

¶15 As the referee observed, the OCI matter is relevant not for the violations per se, but rather as they inform whether Attorney Parks "has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards," and whether he "can safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and

11

confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts." SCR 22.29(4)(f) and (g). The referee noted that this incident occurred before Attorney Parks' law license suspension, and that Attorney Parks admitted that he bore the ultimate responsibility for his actions. The referee found Attorney Parks' testimony credible and opined that by obtaining and relying on professional advice, Attorney Parks exhibited appropriate judgment and sought to act properly. The referee commented that his errors were "greatly mitigated by his genuine attempts to get it right."

¶16 The referee then considered Attorney Parks' failure to fully disclose to the OCI the scope of his attorney misconduct. Specifically, in his answer to the OCI's complaint, Attorney Parks admitted having been found to have committed eight counts of professional misconduct. However, he denied the remaining characterizations in the paragraph, i.e. that he was found to have committed eight counts of misconduct "including acts of dishonesty, fraud, deceit or misrepresentation against a client."

¶17 The referee acknowledged the OLR's legitimate concern that "this appears to be an attempt to minimize his culpability, which would cast doubt on his truthfulness, his understanding of his responsibilities, and his fitness to be consulted." Attorney Parks took the position that that not all of the eight counts of professional misconduct involved violations of SCR 20:8.4(c) (i.e. acts of dishonesty, fraud, deceit or

misrepresentation against a client). So, he reasoned that the phrase "eight counts of professional misconduct as an attorney, including acts of dishonesty, fraud, deceit or misrepresentation against a client" was "technically" inaccurate. The referee deemed Attorney Parks' explanation credible and concluded that he satisfied SCRs 22.29(4)(f) and (g) and that the OCI matter should not preclude his reinstatement to the practice of law. We accept the referee's findings and conclusions with respect to this matter.

## II. 2018 TAX RETURNS

¶18 Shortly before the reinstatement hearing, the OLR expressed concern about a deduction that Attorney Parks claimed on his 2018 tax return. At the hearing, Attorney Parks' tax preparer testified and opined that the deduction was appropriate, and noted that a different tax preparer had claimed the same deduction the previous year.

¶19 Again, the issue is not whether the deduction was improper, per se, but whether it reflects adversely on Attorney Parks' ability to demonstrate that his conduct has been exemplary and above reproach. SCR 22.29(4)(e). The referee noted that the OLR presented no testimony to contradict the tax preparer's opinion. The referee noted favorably that Attorney Parks not only relied on his tax preparer's advice, but also specifically asked about that item while preparing his tax returns. The referee concluded that Attorney Parks' handling of the tax question should not preclude Attorney Parks'

13

reinstatement. We accept the referee's findings and conclusion with respect to the tax question.

### III. FAILURE TO REIMBURSE FIRM AND CLIENTS

¶20 We turn to the issue that causes us to reject this reinstatement petition. The OLR suggests that Attorney Parks' failure to reimburse his former law firm for legal fees he diverted from it, or to reimburse certain clients for an improperly solicited "gift," should preclude his reinstatement.[13] To be clear, the OLR did not seek restitution in the underlying disciplinary proceeding, citing its restitution policy.[14] The underlying disciplinary referee did not recommend restitution and we did not order it. Parks, 2018 WI 110, ¶1.

¶21 However, the OLR now contends that Attorney Parks' failure to voluntarily reimburse the firm and these clients reflects "a degree of potential callousness or lack of responsibility for his conduct." The OLR suggests this omission

---

[13] The OLR indicated that at least one member of the former firm thought Attorney Parks should have repaid the firm.

[14] In 2007, the OLR formulated a policy whereby it seeks restitution only under the following circumstances:

- The grievant's or respondent's rights in a collateral proceeding will not likely be prejudiced;
- The funds to be restored do not constitute incidental or consequential damages;
- The funds to be restored were in the respondent lawyer's direct control; and
- There is a reasonably ascertainable amount.

See, e.g., In re Disciplinary Proceedings Against Nussburger, 2009 WI 103, 321 Wis. 2d 576, 775 N.W.2d 525.

reflects adversely on Attorney Parks' conduct since his suspension, SCR 22.29(4)(e), and may not wholly satisfy SCR 22.29(4m).[15] The OLR asserted that "at the least that Parks should satisfactorily explain to the referee at the reinstatement proceeding why despite a finding of dishonesty by the Court, Parks has apparently made no effort to pay or repay the firm" or the others affected by his misconduct.

¶22 The referee analyzed this issue carefully and concluded that Attorney Parks' failure to reimburse the firm and his former clients should not be the basis for denying his petition for reinstatement. We disagree.

¶23 In the underlying disciplinary proceeding, Attorney Parks admitted that he performed legal work "on the side" for over 30 clients and that he collected at least $13,875 in fees that he deposited into his personal account. Although Attorney Parks insisted that he had discretion over the cases he accepted and that he was authorized to reduce fees, for example to facilitate a settlement that might otherwise fail, the firm's partners categorically denied that the firm had ever authorized him to work "on the side" or to unilaterally reduce legal fees.

---

[15] The OLR's response references a potential failure to satisfy SCR 22.29(4)(k). This appears to be a scrivener's error. Subparagraph (k) pertains to a lawyer's activities during suspension. Supreme Court Rule 22.29 (4m) requires a petitioner to have made "restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from the fund, or, if not, the petitioner's explanation for the failure or inability to do so."

15

The underlying record was replete with mutual accusations of lying; many of the disciplinary issues turned on credibility assessments. At the end of the day, neither the referee nor this court was persuaded by Attorney Parks' explanations. We determined that he made unauthorized fee reductions, and/or accepted services that benefitted him personally in exchange for a reduction of legal fees, at the firm's expense. He was disciplined, accordingly.

¶24 Attorney Parks was also accused of misconduct in his dealings with C.D. and some of her relatives. C.D. was, at various times, Attorney Parks' client, tenant, and personal friend from the early 1990s until her death in 2013. She rented a home from Attorney Parks and she lent him money. He served as her power of attorney, took her to medical appointments, and visited her. In her will she partially forgave the loan she had made him and she bequeathed to him a number of personal household items. Attorney Parks was also friends with C.D's daughter, L.E., and L.E.'s husband, T.E. Attorney Parks represented T.E. in a personal injury case, wrote two wills for the couple, and was the best man at their wedding.

¶25 The reimbursement dispute at issue here stems from T.E.'s personal injury case. The firm's standard contingency fee agreement provided that the firm would receive 33 percent of any recovery for attorney fees. Around the time of settlement, Attorney Parks unilaterally reduced the attorney fees from 33 percent to 25 percent. The firm received $12,000 less than it should have for the legal representation of T.E.

16

¶26 During this representation Attorney Parks repeatedly mentioned to T.E. and L.E. that clients sometimes gave him a "bonus." When the couple arrived to collect their settlement money, Attorney Parks asked about "his $5,000 bonus." L.E. wrote a $5,000 check and handed it to Attorney Parks. He asked that she write "gift" on the memo line, which she did.

¶27 Although Attorney Parks has maintained this was a gift, neither this court nor the referee in the underlying disciplinary case was persuaded. The referee noted that the couple had little money at this time, and found that they felt compelled to give Attorney Parks the requested bonus. The referee found that the "gift" was not the couple's idea; they felt they needed to pay it to receive their settlement. We agreed and we ruled that by this conduct, Attorney Parks violated SCR 20:8.4(c) and SCR 20:8.4(f).

¶28 At his reinstatement hearing, Attorney Parks was asked why he never repaid his former law firm the funds that he improperly diverted from it. Attorney Parks responded that he not been ordered to do so, he'd had no communication with the firm since the underlying disciplinary hearing, and the firm had not asked for reimbursement. Similarly, when asked why he had not repaid L.E. the $5,000 "gift" that was the basis of her

17

grievance against him, Attorney Parks responded that she had never asked for it to be repaid.[16]

¶29 The referee acknowledged that these were "not the most satisfying answers" to address what "might be considered 'ethical' or 'moral' obligations." The referee, however, was willing to accept that the absence of a restitution order in the underlying disciplinary case "surely had a reasoned basis, which should be accepted" and concluded that Attorney Parks' failure to make restitution in the absence of a restitution order should not preclude his reinstatement.

¶30 We disagree. The requirement to make restitution in SCR 22.29(4m) may include amounts due to those harmed by the lawyer's misconduct, even if restitution is not expressly ordered in the original disciplinary proceeding. In re Disciplinary Proceedings Against Woodard, 2012 WI 41, 340 Wis. 2d 248, 812 N.W.2d 511. On occasion we have ordered, as a condition of practice, that a lawyer make restitution payments after reinstatement from a license suspension, even when restitution was not ordered in the underlying disciplinary proceeding. Id. In Woodward, for example, shortly before the

---

[16] In his report, the referee noted that L.E. was present at the reinstatement hearing, which was open to the public. The referee noted that "somewhat ironically her only comment was to wish Mr. Parks the best of luck in the future." L.E. was not a witness and thus was not cross-examined by either party so there is no additional context for her statement, which the referee described as "surprising and mysterious." It is impossible on this record to ascertain what L.E. meant by this comment.

reinstatement hearing, the lawyer sent a former client a check for $500 as "a full and final settlement" of an acknowledged $1,500 debt. The client objected. We reinstated the lawyer's law license but ordered the lawyer to reimburse the client in full, as a condition of continued practice. Id.

¶31 In this case, even if we were persuaded that Attorney Parks had satisfied all reinstatement criteria, imposing a restitution order as a condition of practice is not a viable option; the precise amount of the obligations are difficult to ascertain. As the OLR explained at the time, "witness accounts differed and credibility uncertainties rendered the amounts at issue not reasonably ascertainable." In any event, we deem Attorney Parks' explanation for his failure to make any effort to make restitution wholly inadequate to satisfy his burden to demonstrate compliance with SCR 22.29(4)(e) and (4m). This omission also causes us to conclude that he has not demonstrated that he possesses the requisite moral character to practice law in this state. See SCR 22.31(a).

¶32 We are under no obligation to reinstate an attorney who has made no effort at all to make restitution to or settle all claims of persons injured or harmed by his misconduct. Lathrop v. Donohue, 10 Wis. 2d 230, 237, 102 N.W.2d 404, 408 (1960) (observing that the practice of law is not a right but a privilege); In re Disciplinary Proceedings Against Hyndman, 2002 WI 6, ¶4, 249 Wis. 2d 650, 638 N.W.2d 293 (stating that a petitioner seeking reinstatement does not enjoy a presumption of rehabilitation upon the expiration of a specified term of

19

suspension). Upon a showing that Attorney Parks has sought in good faith to address the requirements of SCR 22.29(4m), we will be more favorably disposed to a future reinstatement petition. Although a petitioner typically must wait nine months before seeking reinstatement after denial of a reinstatement petition, in this case we exercise our discretion to reduce that time. SCR 22.33(4); In re Disciplinary Proceedings Against Carroll, 2004 WI 19, 269 Wis. 2d 172, 675 N.W.2d 792. Attorney Parks may seek reinstatement when he can demonstrate that he has addressed SCR 22.29(4m).

¶33 Finally, it is our general practice to assess the full costs of a reinstatement proceeding against the petitioning attorney. See SCR 22.24(1m). The OLR's statement of costs indicates that the costs of this proceeding are $6,370.43 as of July 16, 2020. We find no basis to depart from our general policy in this matter and we agree with the referee's recommendation that we impose the full costs of the reinstatement proceeding on Attorney Parks.

¶34 IT IS ORDERED that the petition for reinstatement of Daniel Parks is denied.

¶35 IT IS FURTHER ORDERED that the requirement in SCR 22.33(4) requiring a nine-month waiting period before filing a subsequent reinstatement petition is waived. Daniel Parks may seek reinstatement upon a showing that he has addressed SCR 22.29(4m).

¶36 IT IS FURTHER ORDERED that within 60 days of the date of this order, Daniel Parks shall pay to the Office of Lawyer

20

Regulation the costs of this proceeding, which are $6,370.43 as of July 16, 2020, or enter into a payment agreement plan with the Office of Lawyer Regulation for the full payment of costs over a period of time.

¶37     BRIAN HAGEDORN, J.   (dissenting).   I would grant Attorney Parks' petition for reinstatement.

¶38     Accordingly, I respectfully dissent.

¶39     I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this dissent.